[No. B053722. Second Dist., Div. One. Dec. 5, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
TEODOSO FIGUEROA VENTURA, Defendant and Appellant.

## COUNSEL

Janyce Keiko Imata Blair, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, Donald E. de Nicola and Lauren E. Dana, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ORTEGA, J.**—We affirm the judgment finding defendant Teodoso Figueroa Ventura guilty of various narcotics violations.

### BACKGROUND

After arresting defendant in his car and recovering cocaine and heroin, sheriff's deputies served a search warrant on a garage apartment rented by defendant. There they found cocaine, heroin, narcotics paraphernalia, and a book with notations indicating that the location was being used for narcotics transactions.

While the deputies were in the garage, they answered several phone calls where the callers asked for "George" or "Huero" and discussed the purchase of narcotics. One caller asked for a "quarter gram of stuff and an eight-ball." According to an expert witness, an eight-ball is one-eighth ounce of cocaine.

The owner of the garage apartment testified that a few days before the police raid defendant, whom she knew as George, paid her $510 for one month's rent on the location.

The jury found defendant guilty of possession for sale of cocaine, possession for sale of heroin, and transportation of both substances. He was sent to prison.

DISCUSSION

I

Defendant complains that the telephone conversations in the garage were inadmissible hearsay. He concedes that numerous cases have held to the contrary as to similar conversations in bookmaking cases offered to prove the purpose for which the location is occupied. In *People* v. *Fischer* (1957) 49 Cal.2d 442, 447 [317 P.2d 967], the officer answered several telephone calls where the callers, one asking for the defendant by name, placed bets. The appellate court upheld admissibility of the conversations. In *People* v. *Carella* (1961) 191 Cal.App.2d 115, 139-140 [12 Cal.Rptr. 446], an apartment where bookmaking was thought to occur was raided. A police stenographer remained in the apartment and answered and recorded in shorthand approximately 45 phone calls from people placing bets, some of whom asked for one of the defendants by her nickname. That defendant argued that even if the conversations were admissible to show the use being made of the location, they were not admissible to show her participation. The appellate court rejected that argument and found that the conversations were not hearsay in that they were not admitted for the truth of their content.

The same conclusion was reached by the appellate courts in *People* v. *Klein* (1945) 71 Cal.App.2d 588 [163 P.2d 71], 591-592 (one phone call with a bet placed); *People* v. *Barnhart* (1944) 66 Cal.App.2d 714, 721 [153 P.2d 214] (numerous such phone calls, some asking for defendant by name); and *People* v. *Reifenstuhl* (1940) 37 Cal.App.2d 402, 405-406 [99 P.2d 564] (one call placing a bet).

Defendant attempts to distinguish the instant matter as follows: The Penal Code prohibits not only the act of bookmaking, "but the unlawful keeping

and occupying of premises for gambling paraphernalia and the making of bets . . . ." Thus, the bookmaking conversations are admissible as circumstantial evidence to show that the materials in the room are bookmaking paraphernalia and that the room is being used for such purposes. Here, however, that the garage was being used for narcotics transactions was not in issue. The evidence went beyond that and tended to show that "somebody" possessed for sale the contraband in the garage. The conversations identifying defendant by name tended to show that the "somebody" was defendant. Accordingly, the conversations went beyond the bookmaking cases cited and were offered to prove the truth of the matter stated, that defendant was the occupier of the garage and the possessor of the commercial contraband therein.

We disagree with defendant's analysis. Just because a bookmaking statute proscribes keeping and occupying a place for bookmaking purposes and no like statute exists as to narcotics activity, does not mean the latter is necessarily not in issue. The prosecution, in attempting to prove its case, was not required to do so in the abstract, but was entitled to show where and how the narcotics transactions were conducted. According to defendant, "The bookmaking cases [cited] thus sanction the admission of phone conversations received on telephones within the room as circumstantial evidence to prove that paraphernalia within the room was gambling paraphernalia." Similarly, the phone conversations here were admissible as circumstantial evidence to prove that the contraband within the room was commercial rather than personal contraband. We find no meaningful distinction between the bookmaking cases cited above that declare the conversations admissible and this narcotics case.

In *People* v. *Nealy* (1991) 228 Cal.App.3d 447 [279 Cal.Rptr. 36], "[d]uring the course of [a] search warrant's execution, [the police officer] answered the telephone. Over appellant's objection that the content of the conversation was hearsay, [the officer] testified that the caller asked for appellant by her first name and inquired about purchasing a 'dove.' [The officer], who was experienced in the nomenclature used during cocaine sales, indicated that a 'dove' was a '$20 piece of rock cocaine.' Over appellant's hearsay objection, [the officer] also testified that he returned two telephone calls to numbers recorded on [a beeper found in the location.] Both people asked for appellant by her first name and wanted a 'dove.' " (*Id.* at p. 450.) The appellate court found that the requests to purchase narcotics were not hearsay. They were not considered for the truth of the matters asserted, but were admissible as circumstantial evidence to show that the cocaine seized was commercially held, rather than for personal use.

The same result obtained in *People* v. *Hale* (1968) 262 Cal.App.2d 780, 789 [69 Cal.Rptr. 28], where a caller asked for defendant by name and discussed the purchase of marijuana.

We borrow from an example in footnote 9 of *People* v. *Green* (1980) 27 Cal.3d 1, at pages 23-24 [164 Cal.Rptr. 1, 609 P.2d 468] (overruled on other grounds in *People* v. *Hall* (1986) 41 Cal.3d 826, 834, fn. 3 [226 Cal.Rptr. 112, 718 P.2d 99]), dealing with state of mind: "[W]riters have long pointed out the distinction between (1) using an out-of-court declarant's assertion of his state of mind (e.g., A testifies that he heard the declarant B say, 'I am afraid of C') to prove that mental state directly, and (2) using his assertion of *other facts* (e.g., A testifies that he heard B say, 'C threatened to kill me') to prove the same mental state indirectly. The first is hearsay because it is used *testimonially*, i.e., it is offered for the purpose of inducing the trier of fact to believe in the truth of the assertion itself, just as if the declarant had so testified on the witness stand. The second is not hearsay because it is used *circumstantially*, i.e., it is offered as evidence of conduct on the part of the declarant (B reported that C threatened to kill him) from which the trier of fact is asked to draw an inference as to the declarant's state of mind at the time (B fears C). [Citations.]"

Here, were the testimony that the telephone voice said, "George owns the narcotics in the garage and is selling them," the declaration would be used testimonially, i.e., for the purpose of inducing the jury to believe in the truth of the assertion itself, just as if the telephone declarant had so testified on the witness stand. It would be inadmissible hearsay. But, to paraphrase the officer's testimony, the statement, "May I speak to George—I want a quarter gram of stuff and an eight-ball," is not hearsay because it is used circumstantially to show the use being made of the premises.

On its own motion, the court instructed the jury that, "You have heard evidence relating to incoming telephone calls at the 230 Maple Street garage. If found to be true, you may not consider this evidence for the truth of the matters stated therein but only as circumstantial evidence showing that someone was in possession of these premises for the purpose of narcotic sales." When so limited, the statements are not hearsay. (*People* v. *Jackson* (1989) 49 Cal.3d 1170, 1187 [264 Cal.Rptr. 852, 783 P.2d 211].)

■ We reject defendant's argument that the telephone conversations were excludable under Evidence Code section 352 as cumulative evidence in light of a narcotic expert's testimony that the contraband was possessed for sale. The phone calls were a different type of evidence than the opinion of the expert and tended to corroborate the expert's opinion. The prosecution was not limited to producing only an opinion when it also had evidence of attempted transactions.

## II

Defendant claims he is entitled to credit for 148 days of presentence custody instead of the 145 actually awarded. He was arrested on May 9,

1990, and sentenced on October 3, 1990. This adds up to 148 days. However, as pointed out by respondent, the record shows that on May 9, 10, and 11, he "was a sentenced prisoner on a misd[emeanor] traffic offense." Custody for those three days is not attributable to the instant matter, and the 145-day credit is correct. (*In re Rojas* (1979) 23 Cal.3d 152, 154-157 [151 Cal.Rptr. 649, 588 P.2d 789].)

DISPOSITION

The judgment is affirmed.

Spencer, P. J., and Devich, J., concurred.