Filed 9/6/13  P. v. Alvarez CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>ADAM MANUEL ALVAREZ,<br><br>     Defendant and Appellant. | B243218<br><br>(Los Angeles County<br>Super. Ct. No. KA096105) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, George Genesta, Judge.  Affirmed.

        Philip I. Bronson for Defendant, under appointment of the Court of Appeal, for Defendant and Apellant.

        Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Shawn McGahey Webb and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Adam Manuel Alvarez challenges his convictions for possession and sale of cocaine, possession of firearms, and unlawful possession of ammunition. He maintains that the gang allegations accompanying his convictions for certain gun-related offenses must be reversed due to insufficiency of the evidence and evidentiary error. We reject his contentions and affirm.

## PROCEDURAL BACKGROUND

On March 29, 2012, an amended information was filed, containing seven counts numbered 1, 2, and 4 through 8. The information charged appellant in counts 1 and 4 with possession of a firearm as a convicted felon (former Pen. Code, § 12025, subd. (a)(1)), in count 2 with possession of cocaine with a loaded weapon (Health & Saf. Code, § 11370.1, subd. (a)), in count 5 with possession of a firearm (former Pen. Code, § 12021.1), in count 6 with possession of an assault weapon (former Pen. Code, § 12280, subd, (b)), in count 7 with the sale, transportation, or offer to sell cocaine (Health & Saf. Code, § 11352, subd. (c)), and in count 8 with unlawful possession of ammunition (former Pen. Code, § 12316, subd. (b)(1)).[1] Accompanying each count were allegations that appellant committed the offense for the benefit of a criminal street gang (Pen. Code, § 186.22, subd. (b)(1)(A)), and that he had suffered prior convictions (Pen. Code §§ 667, subd. (a)(1), 667.5, subd. (b)), including one "strike," for purposes of the Three Strikes law (§§ 667, subds. (b) - (i), 1170.12, subds. (a) - (d)). Under count 7, the information also alleged that appellant was personally armed during the

---

[1] The Legislature has repealed several provisions of the Penal Code under which appellant was convicted and replaced them with new statutes carrying over the repealed provisions without substantive change. (Cal. Law Revision Com. com., 51D pt. 1 West's Ann. Pen. Code (2011 supp.) foll. § 12000, p. 32.)

offense ( Pen. Code § 12022, subd. (c)), and that he had been convicted of possession of a controlled substance for sale (Health & Saf. Code, 11370.2, subd. (a)). Appellant pleaded not guilty and denied the special allegations.

The trial was bifurcated with respect to the special allegations concerning appellant's prior convictions.[2] For purposes of the jury trial regarding the offenses charged against appellant, counts 4 through 8 in the amended information were re-numbered counts 3 through 7. The jury was asked to make gang findings only with respect to the offenses related to the possession of firearms and ammunition, as alleged in counts 1, 3 through 5, and 7 (as re-numbered). On April 11, 2012, the jury found appellant guilty as charged, and found the pertinent gang and gun use allegations to be true. Appellant stipulated to the truth of the prior conviction allegations. On August 9, 2012, the trial court sentenced appellant to an aggregate prison term of 29 years and four months.

**FACTS**

A. *Prosecution Evidence*

1. *Evidence Regarding Offenses*

On November 10, 2011, several members of the Los Angeles County Sheriff's Department conducted a surveillance operation regarding appellant's Covina residence, where narcotics activity was suspected. Deputy Sheriff Mario Garcia watched the house from an undercover unmarked van. Nearby were two vehicles containing the rest of the surveillance team, including Deputy Sheriff Steve Busch, who waited in a black-and-white patrol car.

---

[2] Appellant stipulated to a prior felony conviction, for purposes of the jury trial on the offenses that included a prior conviction as an element.

Between 1:00 and 1:30 p.m., Garcia saw appellant's girlfriend, Marissa Godina, leave the residence and drive away in a black Chevrolet Suburban. Garcia later noticed that appellant was a passenger in the Suburban. While Garcia followed the Suburban, Godina pulled over, let Garcia pass, and then began to follow him. Garcia concluded that Godina was engaged in "countersurveillance" tactics. To ensure his safety, he asked the other team members to watch the Suburban.

Busch saw Godina drive through a red light, and stopped the Suburban. The other deputy sheriffs soon arrived. When Busch instructed the Suburban's occupants to show their hands, Godina was cooperative, but appellant moved his hands continuously between the Suburban's center console and his seat. As Busch moved close to the vehicle, he smelled fresh marijuana inside it and saw what appeared to be a plastic bag containing marijuana in a cup holder in the center console.

Busch detained the Suburban's occupants and advised appellant of his *Miranda* rights.[3] When Garcia asked appellant whether the bag found in the Suburban belonged to him, appellant replied, "it's ours." Appellant stated that he belonged to the East Side Duarte gang and owned the Suburban. Appellant denied there were guns or other narcotics in the Suburban, and permitted the deputy sheriffs to search it. Inside the vehicle, the deputy sheriffs found a bag containing .40 grams of cocaine and a loaded handgun in the center console. On or near the front passenger seat was appellant's wallet, which held $1,285 in cash.

Garcia showed the handgun to appellant, who said, "Oh, shit. I forgot it was there. . . . You know how it is out there, Duarte, everybody's getting shot up." Appellant further stated that he "didn't want to get shot up by the blacks." When

---

[3] *Miranda v. Arizona* (1966) 384 U.S. 436.

4

Garcia asked whether appellant's house held any guns, appellant said that he had an assault rifle there.

The deputy sheriffs made a protective sweep of appellant's house to ensure no one was present to destroy evidence. They thereafter obtained a search warrant and conducted a search. In the kitchen, they found a digital scale and a bill displaying appellant's name. Under a bedroom dresser was an assault rifle. The dresser also contained a "pay-owe" sheet and other paperwork bearing appellant's name. Within the bedroom's closet, the deputy sheriffs found a handgun, ammunition, a bullet-resistant "flak" vest, and a plastic storage container holding what appeared to be marijuana. The handgun was later determined to have been reported stolen following a robbery committed by East Side Duarte gang members.

When booked, appellant said he was unemployed. Two cell phones, including appellant's, were taken into evidence. During a supplemental search of the Suburban, deputy sheriffs found a second hand gun hidden in the center console. In addition, a digital scale and a bank statement bearing appellant's name were found in the glove box.

### 2. *Gang Evidence*

Los Angeles County Sheriff's Department Deputy Sheriff David Cortinas, a gang expert, testified that East Side Duarte is a Hispanic gang whose territory lies within Duarte. The gang's most important rival is an African-American gang known as the Duroc Crips. Appellant belongs to the East Side Duarte gang.

Cortinas further testified that the East Side Duarte gang engages in many crimes, including theft, possession of weapons, possession of narcotics, selling of narcotics, robberies, assaults, attempted murders, and murders. He opined that the crimes charged against appellant related to the possession of firearms were

5

committed for the benefit of that criminal street gang.  (Pen. Code § 186.22, subd. (b)(1)(A).)

B.  *Defense Evidence*

Appellant presented no evidence.

# DISCUSSION

A.  *Gang Enhancements*

Appellant contends the gang enhancements accompanying his convictions for possession of firearms and ammunition fail for want of substantial evidence. Penal Code section 186.22, subdivision (b)(1), provides a sentence enhancement for a defendant convicted "of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ."  To establish the enhancement, the prosecution relied primarily on expert testimony from Deputy Sheriff Cortinas.  Appellant argues that Cortinas's testimony and the other evidence was insufficient to show that his offenses were committed for the benefit of the East Side Duarte gang.  For the reasons discussed below, we disagree.

1.    *Standard of Review*

Our inquiry follows established principles.  "In determining whether the evidence is sufficient to support a conviction . . . , 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'  [Citations.]  Under this standard, 'an appellate court in a criminal case . . . does not ask itself whether it believes that the evidence at the

6

trial established guilt beyond a reasonable doubt.' [Citation.] Rather, the reviewing court 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence -- that is, evidence which is reasonable, credible, and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Vy* (2004) 122 Cal.App.4th 1209, 1224.)

Here, appellant's challenge targets Cortinas's testimony. Generally, expert testimony may be presented to establish the culture and habits of criminal street gangs and related matters (*People v. Gardeley* (1996) 14 Cal.4th 605, 617), including whether the defendant possessed a gun for the benefit of his gang (*People v. Garcia* (2007) 153 Cal.App.4th 1499, 1512-1514 (*Garcia*)). As with other types of expert witness, the prosecution is authorized to elicit testimony from a gang expert by asking hypothetical questions. (*People v. Gonzalez* (2006) 38 Cal.4th 932, 946.) Thus, a gang expert may render an opinion on the basis of a hypothetical question that asks the expert to assume the truth of specified facts, provided the hypothetical is "rooted in facts shown by the evidence . . . ." (*Gardeley*, *supra*, 14 Cal.4th at p. 618.)

### 2. *Expert Testimony*

Cortinas, a gang investigator with the Operation Safe Streets Bureau, testified that although Hispanic gangs such as the East Side Duarte gang are territorial, their members sometimes live outside their claimed territory. According to Cortinas, the East Side Duarte has approximately 339 documented members, who "put[] in work" by engaging in narcotics-related crimes and crimes involving the possession of weapons. They wear baseball caps bearing the letter "D," display distinctive tattoos, and make graffiti markings involving the numeral "13," which discloses the gang's affiliation with the Mexican Mafia. Cortinas

stated that in order to use that numeral, "you have to basically acknowledge that you are aligning yourself with the Mexican Mafia and doing work and paying them some of the money you make for the gang." Cortinas noted that appellant had visible tattoos reading "Duarte" and "E.S." on his head.

Responding to hypothetical questions, Cortinas opined that appellant committed the gun-possession offenses for the benefit of the East Side Duarte gang with the specific intent to promote its criminal activities. In support of that opinion, Cortinas pointed to the evidence that appellant's Suburban contained both narcotics and guns, and stated, "Narcotics sellers usually have guns to protect themselves from anybody [who is] trying to rip them off or kill them." Cortinas maintained that appellant's drug sales funded the East Side Duarte gang and enhanced its reputation. In addition, observing that a hand gun reportedly stolen by other East Side Duarte members was found in appellant's house in Covina, Cortinas opined that the residence functioned as a "safe house" for the East Side Duarte gang, where its members could hide stolen goods outside Cortinas's investigative area.

Cortinas also opined that the pay-owe sheet found in appellant's residence evidenced that his gun possession was for the benefit of his gang. According to Cortinas, unlike a usual pay-owe sheet, which records funds owed by individuals for drug transactions, appellant's pay-owe sheet listed sums that individuals owed with respect to certain gangs in the Hacienda Heights-La Puente area. Cortinas explained: "This paper here is not your typical pay-owe sheet for selling narcotics. This looks like somebody collecting taxes on behalf of the Mexican Mafia. [¶] . . . [¶] Every gang makes money, and . . . if you're aligning yourself with the Mexican Mafia, you have to pay money to them to be aligned with them. So it's called taxes."

8

In cross-examining Cortinas, defense counsel asked whether appellant's remark that he "didn't want to get . . . shot up by the blacks" showed that appellant had placed the guns in his Suburban solely for his own self-protection. Cortinas replied that the evidence established that appellant was significantly involved in gang activities, including the sale of narcotics. He also maintained that appellant possessed the hand gun and assault rifle found in the house for the benefit of his gang.

During the re-direct examination of Cortinas, the prosecutor inquired whether appellant might have placed the guns in the Suburban to benefit his gang, even though he also derived a personal benefit from their presence. Noting that there were two guns in the Suburban, Cortinas responded in the affirmative, explaining that if a gang member with two guns was contacted by another who needed a gun, he could provide a gun and remain "good."

### 3. *Analysis*

Appellant maintains there was insufficient evidence to establish that he possessed the firearms and ammunition in his vehicle and residence "for the benefit of" his gang (Pen. Code, § 186.22, subd. (b)(1)(A)). We disagree.

In *Garcia*, police officers stopped a truck driven by the defendant, a gang member, because the truck's tail light was out. (*Garcia, supra,* 153 Cal.App.4th at pp. 1502-1504.) After the officers smelled marijuana, the defendant admitted that he had smoked some marijuana, and consented to a search of the truck, which disclosed a concealed handgun. (*Id.* at p. 1503.) Although the defendant had a history of gang activity, he denied active gang membership, yet demonstrated a knowledge of recent shootings by members of his gang, including where they hid guns. (*Id.* at p. 1504.) The charges against the defendant included carrying a loaded unregistered weapon in public, accompanied by a gang allegation. (*Id.* at

9

p. 1507.) At the trial, a gang expert opined that the defendant possessed the gun for the benefit of his gang, as it enabled him to protect himself and fellow gang members from rival gangs, and thus enhanced his gang's reputation. (*Id*. at pp. 1505-1506.) After a jury convicted the defendant and found the gang allegation to be true, the appellate court held there was sufficient evidence to support the gang finding. (*Id*. at pp. 1507, 1511-1512.)

Here, the evidence is significantly stronger that appellant possessed guns and ammunition to benefit his gang. The evidence at trial showed that appellant belonged to the East Side Duarte gang, whose rivals include an African American gang. Two firearms, cocaine, a digital scale, and a large amount of cash were found in appellant's Suburban, and two more firearms, ammunition, a second digital scale, and a pay-owe sheet were discovered at his Covina residence. When stopped by the deputy sheriffs, appellant acknowledged his gang membership and admitted that one of the firearms in the Suburban was there because he "didn't want to get shot up by the blacks." In addition, one of the guns in appellant's house was reported stolen following a robbery by appellants' fellow gang members.

On the basis of this evidence, Cortinas opined that appellant was engaged in three activities beneficial to his gang, namely, narcotics sales, the operation of a safe house where stolen goods could be kept, and collecting "taxes" for the Mexican Mafia, with which appellant's gang was aligned. Cortinas further opined that appellant's guns protected him in the course of his narcotics sales and other activities that funded his gang, and also enabled him to assist other gang members. In our view, the evidence was sufficient to establish that appellant possessed the guns and ammunition to benefit his gang.

Appellant's reliance on *People v. Ochoa* (2009) 179 Cal.App.4th 650, *People v. Ramon* (2009) 175 Cal.App.4th 843, *People v. Albarran* (2007) 149

10

Cal.App.4th 214 and *In re Frank S.* (2006) 141 Cal.App.4th 1192 is misplaced. Those cases stand for the proposition that when an expert's opinion that the defendant's crime benefited the pertinent gang relies solely on the defendant's gang membership, the opinion will not support a gang enhancement. (*People v. Ochoa, supra,* 179 Cal.App.4th at pp. 656-665; *People v. Ramon, supra,* 175 Cal.App.4th at pp. 849-853; *People v. Albarran, supra,* 149 Cal.App.4th at p. 227; *In re Frank S., supra,* 141 Cal.App.4th at pp. 1195-1199.) That proposition is inapplicable here, as Cortinas's opinions were based on facts beyond appellant's gang membership and his possession of the firearms and ammunition.[4] In sum, there was sufficient evidence to support the gang enhancements accompanying appellant's convictions for possession of firearms and ammunition.

B. *Text Messages*

Appellant maintains the trial court erred in admitting Detective Cortinas's testimony regarding the existence of text messages requesting narcotics. His sole contention is that the testimony constituted inadmissible hearsay. As explained below, we disagree.

1. *Governing Principles*

Evidence Code section 1200 defines hearsay evidence as evidence of an out-of court statement "that is offered to prove the truth of the matter stated." As our Supreme Court has explained, an out-of-court statement is hearsay when "it is used

---

[4] For similar reasons, *People v. Martinez* (2004) 116 Cal.App.4th 753, upon which appellant also relies, is factually distinguishable. There, the court concluded there was insufficient evidence to support a gang registration requirement attached to the defendant's sentence (Pen. Code, § 186.30), as there was no evidence that the defendant committed his crime for the benefit of his gang. (*People v. Martinez, supra,* 116 Cal.App.4th at. pp. 758-762.) As explained above, that is not the case here.

testimonially, i.e., it is offered for the purpose of inducing the trier of fact to believe in the truth of the assertion itself . . . ." (*People v. Green* (1980) 27 Cal.3d 1, 23, fn. 9, italics omitted, overruled on other grounds in *People v. Martinez* (1999) 20 Cal.4th 225, 232-238.) Under this principle, requests ordinarily do not constitute hearsay because "[a] request, by itself, does not assert the truth of any fact . . . ." (*People v. Jurado* (2006) 38 Cal.4th 72, 117 (*Jurado*).)

California courts have commonly regarded evidence that a defendant received requests to buy narcotics as admissible circumstantial evidence that the defendant sold contraband, rather than as hearsay. In *People v. Nealy* (1991) 228 Cal.App.3d 447, 449-450 (*Nealy*), the defendant was charged with possession of cocaine for sale. Over hearsay objections, police officers were permitted to testify that while they searched the defendant's residence, they answered several phone calls from persons interested in buying "doves," a slang term for rock cocaine. (*Id.* at pp. 450-451.) The appellate court concluded that the calls were not hearsay, but circumstantial evidence supporting the inference that the cocaine found in the defendant's residence was for sale. The court stated: "[S]ubject to Evidence Code section 352, and appropriate editing, when a police officer participates in a telephone conversation where he is lawfully executing a search warrant and hears a third person offer to purchase a controlled substance, testimony thereon is not made inadmissible by the hearsay rule and may be received as circumstantial evidence tending to show the controlled substance seized at that location was possessed for purposes of sale." (*Id.* at pp. 452- 453; see also *People v. Ventura* (1991) 1 Cal.App.4th 1515, 1517-1519 [reaching same conclusion on similar facts]; *People v. Reifenstuhl* (1940) 37 Cal.App.2d 402, 405 [phone calls to defendant requesting that bets be placed on horse races properly admitted over hearsay objection as circumstantial evidence that defendant operated illegal betting enterprise].)

In *People v. Morgan* (2005) 125 Cal.App.4th 935, 945 (*Morgan*), the appellate court recognized the "well established" principle that such evidence is properly admitted over a hearsay objection, but adopted an alternative theory to support the principle, namely, that requests to buy drugs are admissible hearsay. In offering the theory, the court observed that any inference from the request to the defendant's sales activity necessarily relies on some implications from the words of the request, namely, that the speaker desires drugs and believes that the defendant can provide them. (*Id*. at p. 943.) The court reasoned that those implications are properly classified as "implied assertions" that constitute hearsay. (*Id*. at pp. 943-944.)

Nonetheless, the court concluded that the hearsay rule does not bar the admission of such "implied assertions," as they do not display the untrustworthiness characteristic of assertions subject to exclusion under the hearsay rule. (*Morgan, supra,* 125 Cal.App.4th at p. 944.) The court stated: "The rationale for not treating an implied assertion as an assertion subject to the hearsay rule is that is it primarily conduct and not intended as an assertion. To the extent conduct . . . rather than simply words are involved, the implied assertion is more reliable. . . . [¶] This rationale applies to the [request by phone] in this case. The caller was not intending to assert that [the defendants] were selling methamphetamine; rather, he was attempting to purchase methamphetamine. Because actions speak louder than words, the caller's statements were more reliable than the usual hearsay statement." (*Ibid*.)

2. *Underlying Proceedings*

Near the completion of Cortinas's testimony, after he stated that gang members often communicate by cell phone and text messages in order to obtain guns, the following exchange occurred:

13

"[Prosecutor:]  Going back . . . briefly to the drug sales, if . . . cell phones [were] recovered, and during [the] investigation[] those cell phones were constantly alerting [that] text messages . . . were being received . . . that related to drug activity, would that affect your opinion in any way?

"[Cortinas:]  In terms of gang [*sic*] or sales?

"[Prosecutor:]  In terms of the possession of those drugs for the benefit of the gang.

"[Cortinas:]  Absolutely.

"[Prosecutor:]  Why?

"[Cortinas:]  *Because the text messages themselves are asking specifically for narcotics*.  Now, a gang member who's selling drugs for his gang --" (Italics added.)

At this point, the trial court remarked that Cortinas's answer assumed facts not in evidence, and defense counsel objected that the prosecutor's question exceeded the scope of the cross-examination.  The court conducted a bench conference, during which the prosecutor stated that her question anticipated a stipulation regarding text messages on a cell phone that the deputy sheriffs discovered.  According to the prosecutor, she and defense counsel had tentatively agreed to stipulate that the cell phone "was alerting as to multiple text messages that were related to drug activity."  Defense counsel replied that the stipulation would merely be that "the phone was ringing and ringing, which would be consistent with drug activity."

In discussing the proposed stipulation, the court observed that the relevance of any such cell phone evidence to the issue of drug sales resided "not [in] the ringing," but in "what . . . the texting [is] for . . . ."  Defense counsel argued that "all that stuff" was hearsay and inadmissible under Evidence Code section 352.  In response, the court stated:  "I don't think it's hearsay. . . .  [W]e can talk about

14

whether it's correctly characterized as hearsay evidence or [an] exception to the hearsay rule, but [it is] circumstantial evidence in the case law." The prosecutor offered to present testimony from Cortinas regarding the content of the text messages, and asked whether the court would admit his testimony. After noting that Evidence Code section 352 might bar that testimony because there was other evidence that appellant sold drugs, the court stated: "[W]e'll address it later," and asked the prosecutor to "[c]lose it out."

The prosecutor immediately ended her examination of Cortinas. No stipulation regarding the cell phone was introduced, and no additional evidence was presented regarding the text messages on it.

### 3. *Analysis*

Appellant targets Cortinas's remark that "the text messages themselves [were] asking specifically for narcotics," arguing that "the text messages are 'classic hearsay' because they are relevant solely to prove the truth of what they imply . . . ." He maintains that because no further evidence was submitted regarding wording of the text messages or the cell phone on which they were found, the text messages were "too unreliable" to be admissible under the theories stated in *Nealy* and *Morgan*. He is mistaken.

Viewed in context, Cortinas's remark appears to be an assertion that text messages "specifically asking for narcotics" were discovered on the cell phones booked into evidence during the investigation of appellant's crimes. So understood, the remark constituted evidence of the existence of requests for narcotics that was admissible over a hearsay objection. Under *Nealy*, the remark was not subject to exclusion because requests for narcotics are not hearsay. Furthermore, under *Morgan*, the remark was not subject to exclusion because a person's request for narcotics, even if considered hearsay, is "primarily conduct"

15

that reliably conveys the person's desire for narcotics and belief that the request's recipient can supply them. (*Morgan*, *supra*, 125 Cal.App.4th at p. 944.) Accordingly, the hearsay rule did not render Cortinas's remark inadmissible.[5]

Appellant argues that in the absence of other evidence regarding the details of the text messages and their surrounding circumstances, Cortinas's remark was subject to exclusion under the hearsay rule. We disagree. Neither *Nealy* nor *Morgan* suggests that evidence regarding the precise wording of a request for narcotics and the circumstances of its discovery are necessary predicates for admission of the request over a hearsay objection, although they recognize that the admission of the request is also subject to other requirements that appellant has not invoked, including those stated in Evidence Code section 352. (*Nealy*, *supra*, 228 Cal.App.3d at p. 453; see *Morgan*, *supra*, 125 Cal.App.4th at pp. 940-941.) Here, the absence of evidence regarding the details of the text messages affected the evidentiary weight attributable to Cortinas's remark and potentially opened it to other objections, but did not render the remark vulnerable to a hearsay objection. In sum, appellant has shown no evidentiary error.[6]

---

[5]    In so concluding, we do not examine or adopt the theory stated in *Morgan*, or decide whether that theory can be reconciled with our Supreme Court's statement that "a request, by itself, does not assert the truth of any fact . . . ." (*Jurado*, *supra*, 38 Cal.4th at p. 117.)

[6]    In addition, even if we were to conclude the remark was incorrectly admitted, we would find any error harmless. The remark occurred while Cortinas explained his opinion that appellant's possession of firearms benefited his gang. As explained above (see pt. A.3, *ante*), that opinion relied on considerable evidence independent of the remark, showing that appellant, an active gang member, sold drugs, operated a safe house, and collected "taxes" to benefit his gang. Under the circumstances, there is no reasonable likelihood that appellant would have achieved a more favorable outcome had the remark been excluded. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

## DISPOSITION

The judgment is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MANELLA, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.