Filed 2/19/15  P. v. Conley CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>     v.<br><br>CHAD MASEO CONLEY,<br><br>       Defendant and Appellant. | C075095<br><br>(Super. Ct. No. CRF111818) |

A jury found defendant Chad Maseo Conley guilty of transporting marijuana (Health & Saf. Code, § 11360, subd. (a))[1] and possession of marijuana for sale (§ 11359). Sentenced to three years of incarceration, he appeals. He contends the trial court abused its discretion in admitting one of his prior convictions and his cell phone records as

---

[1] Further undesignated statutory references are to the Health and Safety Code.

1

evidence at trial.  He also contends the court erred in failing to instruct fully on his

defense.  We reject these contentions and affirm.

**FACTS**

*The Stop*

Early in the morning of April 8, 2011, Davis police officer Derek Russell stopped

a blue Infiniti for expired registration.  Aaron German was the driver and defendant was

the passenger.  Defendant said the car was his.  Russell smelled a strong odor of unburnt

marijuana and asked if there was anything illegal in the car.  Defendant said he had a

cannabis card and two ounces of marijuana in his backpack.  Russell asked defendant and

German to step out of the car and searched both.  Defendant had $522 in wadded up bills

in his pocket.  The denominations were $100 (1), $20 (19), $10 (2), $5 (2), $2 (4), and $1

(4).

A search of the car revealed four baggies of marijuana, two digital scales, a box of

sandwich bags, and no drug paraphernalia for smoking.  One of the scales had marijuana

residue on it.  The four baggies weighed 3.3, 3.18, 1.5, and .86 ounces, for a total of 8.8

ounces.  Each tested positive for marijuana.

Officer Russell believed defendant possessed marijuana for sale.  He read

defendant his *Miranda*[2] rights and defendant said he understood and then gave a

statement as follows:  He had come to Davis to pick up German.  German said he had not

been drinking so defendant let him drive.  All of the marijuana was defendant's, for his

personal use.  He had obtained a cannabis card after he had been arrested in Sacramento

for marijuana sales; he was just off probation for selling marijuana and did not want to

"get in trouble" again.  When Russell asked defendant why he had so much marijuana,

---

[2]  *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694].

defendant said he did not know, but conceded it was a "bad idea to bring that much marijuana to Davis." Defendant also said it was common for him to carry cash.

*The Text Messages*

Russell searched defendant's cell phone.[3] There was a text message from the previous evening. It read: "u got sum tree this nigga Zacks bro needs a $10 sack."[4]

Detective John Evans performed a forensic examination of defendant's cell phone pursuant to a search warrant. Between the afternoon of April 4, 2011 and the morning of defendant's arrest on April 8, 2011, his phone had received 85 text messages and sent 23 messages. It had also made and received hundreds of calls during that time period, some to the numbers from which text messages were sent.

There were several text messages from someone known as Tre Mond.

(1) "No gud? u still gone to bring that."

(2) "Tell her 80."

(3) "No gud?"

(4) "Na the tree i need dub. An i think sandys water broke so i need asap."

(5) "Fuuuuuuuuck!"

There were three responses. "Fell asleep out front of her house she's not home." "I don't have trees til friday." "Tellin me."

---

[3] Defendant does not challenge this search. In *Riley v. California* (2014) __ U.S. __, __ [189 L.Ed.2d 430, 452], the United States Supreme Court held that a search warrant is required to search a cell phone seized incident to arrest. In April 2011, when Officer Russell searched the cell phone, the search was authorized by the California Supreme Court's decision in *People v. Diaz* (2011) 51 Cal.4th 84, which was decided three years before *Riley* and a few months before the search in question. *Diaz* was the clearly established law in this state at the time of the search and the good faith exception to the warrant requirement applies to reasonable reliance on binding precedent. (*Davis v. United States* (2011) __ U.S. __, __ [180 L.Ed.2d 285, 302].)

[4] All errors in spelling, grammar, etc., that appear in the reprinted text messages are in the originals.

There were several text messages from someone named Trina:

(1)"My boy said around 4:30 he is gonna see his boy that got that for you he said 2200 for you since he has to make up 200 for the last time and I got 300 for you so 1900 all together."

(2) "Ricky has to wait for his boy with that dark to pull in town from sf he got some knew I guess he said are bringing him 5 of these so if you like it :) you can get more :)"

(3) "He said for me to expect his call around 6 but I got called to work 5 to 7 so it will be more like 7 but if your hungry come have a free buffet tonight is all you can eat at my spot i'll hook you up free."

(4) "Ricky didn't answer let me know when you wanna come pick up this bread."

(5) "Just wakin up i'll call my boy."

(6) "He already sold out of that 5 he had I have to wait till his next batch I can call someone else but you need to this reinversment I can just ask him to give me a little tree or the 200 if you want??"

(7) "Ok I gotta let him know that you just want the 200 he will probably have me cover it and pay me back I will need a day or 2 if that's the case unless he just shoots me the cash so let me call him again hold up."

A text was sent to Trina from defendant's phone. "Still need that." A second text said, "Ill just grab the 200."

There were two text messages sent by Jesse Clone. (1)"My outdoor guy said 875 if u know anyone." 2) "I'm ready for ice cream whenever u got it."

There were two texts sent to Clone asking, "What's good?"

Texts from Tommy Erica included the following.

(1) "Aye it tommy. Would u do 50 yellows for 3 a piece?"

(2) "We're here bro," followed a few minutes later by, "Aye man I just drove all the way out here and wasted my cousins gas. Thanks dude."

4

(3) Later that night, "If we came back out there would u rather want to give him a better price or gas money. Like deduct how much money u were gonna give him for gas."

(4) "Just to make sure, ur gonna pick up ur phone right? Im askin cause my cousin will literally disown me."

Other text messages included the following. "So what's the business? We still in motion or did we run into a red light? Let me know what's up." "I got somas fa cheap hit me up." "I got beans."

*Drug Expert Testimony*

Ryan Bellamy was a police officer with the Yolo County Narcotic Enforcement Team (YONET), who had done undercover work. He qualified as a drug expert, and opined that defendant possessed the marijuana for sale. He found indicia of sales due to the quantity of the drug, the scales, packaging, and the quantity of cash. He also considered the text messages in forming his opinion. Sandwich bags were often used as packaging material. He believed 7.7 ounces (the weight of the marijuana without the packaging) was a "long supply" even for a frequent user. Bellamy testified a usual dose is .2 to .5 grams, and a dose lasted three to five hours. The quantity of marijuana defendant had would keep a user "consistently high" for between 55 and 229 days, depending on the dosage unit and quality of the marijuana.

Bellamy testified drug dealers were reluctant to respond to text messages because they are aware that the police search phones on arrest. They will often respond by telephone call. He explained some of the slang used; "dank," "tree" and "green" meant marijuana, "dub" was a $20 sack of marijuana, "ice cream" was a strain of marijuana, and "yellows" were a Vicodin-type pill. He explained how the text messages defendant received could be drug-related. For example, the message about Ricky with "dark" probably meant "dank" or marijuana, and "those five for you" referred to five pounds of marijuana.

5

*The Defense*

Defendant testified that he had a medical marijuana card and was the organizer of a medical marijuana collective with four members: himself, Zach Billingsley, Patrick Healy, and Doug Ellis (who had died). Defendant claimed he tried to follow the applicable law and not "get in trouble." He had been in trouble in the past and had a conviction for possession of marijuana for sale. The $522 he had when stopped was payment for work he did for a tree company, but he always carried cash.

Billingsley testified about his membership in the collective. He had never seen defendant sell marijuana to anyone outside the collective.

## DISCUSSION

### I

### *Admission of Prior Misconduct*

Defendant contends the trial court abused its discretion in admitting his prior conviction for simple possession of marijuana.[5] He contends the only issue as to which it was relevant--knowledge of the nature of marijuana--was not in dispute, and the evidence was prejudicial because it was used to show his criminal propensity and also involved cocaine.

A. *Background*

Prior to trial, the People sought to admit three prior convictions: possession of marijuana for sale; possession of a controlled substance; and possession of a controlled substance for sale. In addition to using the priors for impeachment should defendant testify, the People sought admission in their case-in-chief under Evidence Code section

---

[5] As we discuss *post*, the trial court did not actually admit the *conviction*; rather, the trial court permitted evidence of the conduct underlying the prior conviction. The fact of defendant's conviction was never before the jury.

1101, subdivision (b), to prove knowledge and absence of mistake.[6] The trial court ruled the first and third convictions, the sales convictions, were admissible "under 1101(b)," without further detail, after the People withdrew their request for admission of the simple possession conviction.

At trial, the People called Officer Michael Stoltzfus, who testified about a 2007 drug-related case involving defendant. A citizen, who thought subjects were breaking into a car, hailed Stoltzfus. Defendant was nearby and the officer asked him if it was his car; defendant said yes. The officer went after two other men and defendant began to walk away. Stoltzfus told him to stop.

At this point in the testimony, the defense asked to approach. Outside the presence of the jury, the court noted the conduct being described related to the conviction that it had ruled inadmissible. The court asked the prosecutor, "Why are we getting into this?" The prosecutor admitted he had "messed up" and called the wrong officer. He asked to be allowed to continue to elicit the facts because the case, although it resulted in only a simple possession conviction, was a *sales arrest* and had similarities to this case. After confirming with the officer that the case was originally a sales investigation (based on the amount of marijuana), the court asked the defense what was the prejudice in admitting the testimony, and defense counsel responded, "Under traditional balancing, I suspect there is no[ne] . . . ." The prosecutor indicated the officers who could testify to the two convictions the court had ruled admissible were unavailable to testify, as they were "cut loose a long time ago." The court ruled that the People could pursue the line of

---

[6] The reference to absence of mistake is puzzling. The People reference defendant's failure to realize the "cards" were stolen, but there is no evidence of stolen medical marijuana cards or any other stolen cards in this case. As we detail *post*, the trial court instructed the jury that the evidence could be considered only for that purpose (to prove intent to sell) and to prove defendant's knowledge that marijuana was a controlled substance.

7

questioning of Officer Stoltzfus, who could testify about his observations, but not the convictions, and ruled defendant's other two convictions were now admissible only as impeachment.[7]

Stoltzfus testified defendant gave his name as Bobbit, and Bobbit was on probation and thereby searchable. The officer searched defendant and found $998.40, mostly in $20 bills. Defendant had a baggie of white powder, later determined to be cocaine, in his pants pocket. A search disclosed 1.4 ounces of marijuana in the center console of the car and a scale. Defendant was arrested for possession for sale of marijuana. He volunteered to the officer that he had given a false name and said he did not sell drugs and used only marijuana, no other drugs.

Later, the defense objected to the "playing of my client's prior conviction." Due to the prosecutor's negligence, the People now had three priors to use for impeachment, as well as evidence about defendant's possessing cocaine and using a fake name. In response to this concern, the trial court excluded use of the conviction for possession for sale of a controlled substance for impeachment.

The trial court instructed the jury that the People presented evidence that defendant committed an earlier offense of possession for sale of marijuana. If the jury found defendant committed this offense, it could consider the evidence "for the limited purpose of deciding whether or not in this case the defendant acted with the intent to sell

_____

[7] Although under the circumstances we do not criticize the trial court's self-described "equitable ruling," we are compelled to note that it is incumbent upon the prosecutor to better prepare for trial. It is unacceptable for a prosecutor to successfully seek to admit testimony (on a puzzling basis, as we have described) regarding certain events to be elicited from witnesses who were "cut loose," and instead elicit testimony from a different witness of events that were ruled inadmissible. "This case involves ' "a particularly unpardonable fault of the prosecutor-unpreparedness." ' [Citation.]" (*Dietrick v. Superior Court* (2013) 220 Cal.App.4th 1472, 1474.)

8

marijuana or the defendant knew of the marijuana's nature or character as a controlled substance."

B. *The Law*

"Unlawful possession of a controlled substance for sale requires proof the defendant possessed the contraband with the intent of selling it and with knowledge of both its presence and illegal character. [Citation.] Transportation of a controlled substance is established by carrying or conveying a usable quantity of a controlled substance with knowledge of its presence and illegal character. [Citations.]" (*People v. Meza* (1995) 38 Cal.App.4th 1741, 1745-1746.) By pleading not guilty, defendant put at issue all the elements of the offenses. (*People v. Steele* (2002) 27 Cal.4th 1230, 1243.)

"Evidence Code section 1101, subdivision (a), generally prohibits the admission of evidence of a person's character or a trait of his or her character when offered to prove his or her conduct on a specified occasion." (*People v. Avila* (2006) 38 Cal.4th 491, 586.) Subdivision (b) of Evidence Code section 1101, however, permits admission of defendant's past criminal acts when relevant to prove a material fact at issue, such as identity, intent, or knowledge. (*People v. Roldan* (2005) 35 Cal.4th 646, 705, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421 & fn. 22.) "In prosecutions for drug offenses, evidence of prior drug use and prior drug convictions is generally admissible under Evidence Code section 1101, subdivision (b), to establish that the drugs were possessed for sale rather than for personal use and to prove knowledge of the narcotic nature of the drugs. [Citation.]" (*People v. Williams* (2009) 170 Cal.App.4th 587, 607 (*Williams*).)

The admissibility of uncharged misconduct "depends on the materiality of the fact sought to be proved, the tendency of the prior crime to prove the material fact, and the existence or absence of some other rule requiring exclusion." (*People v. Whisenhunt* (2008) 44 Cal.4th 174, 203.) The admission of evidence under section 1101 is reviewed on appeal for an abuse of discretion. (*People v. Memro* (1995) 11 Cal.4th 786, 864.)

9

C. *Analysis*

In an apparent failure to read the record closely, defendant argues at length that the trial court erred when it admitted his conviction for simple possession. However defendant's *conviction* was not admitted. Rather, the court admitted only evidence of defendant's *conduct* in possessing marijuana for sale, which it referred to as defendant's "offense," not that he was convicted of any crime. Defendant also misstates the purposes for which the evidence was admitted. As we have noted, while the People *offered* knowledge and absence of mistake as the purposes for which the evidence was admitted, the trial court *admitted* the evidence to show intent to sell and knowledge of the nature of marijuana, as evidenced by its instructions to the jury. As the defense closing argument recognized, intent to sell was the primary issue in dispute.

"Evidence of uncharged offenses 'is so prejudicial that its admission requires extremely careful analysis. [Citations.]' [Citations.] 'Since "substantial prejudicial effect [is] inherent in [such] evidence," uncharged offenses are admissible only if they have *substantial* probative value.' [Citation.]" (*People v. Ewolt* (1994) 7 Cal.4th 380, 404.) Because defendant has failed to address the primary purpose--to show intent to sell--for which the disputed evidence was admitted, his argument that the evidence was unduly prejudicial fails to persuade. Evidence of defendant's prior illegal conduct relating to marijuana sales was admissible to show his intent to sell the marijuana in his possession as well as his knowledge of the nature of marijuana, both of which were at issue due to his not guilty plea. (See *Williams, supra,* 170 Cal.App.4th at p. 607.) We find no abuse of discretion.

II

*Admission of Cell Phone Records*

Defendant contends the trial court abused its discretion in admitting, over his hearsay objection, cell phone records consisting of call logs and text messages. He

10

contends it was error to admit messages to which he did not respond, and the evidence was unreliable. For reasons we explain *post*, we find no abuse of discretion.

A. *Background*

Defendant objected several times to the admission of the contents of text messages from his cell phone. The trial court overruled the objections, but also limited the jury's consideration of the messages to their effect on defendant, instructing the jury, "Ladies and gentlemen, the message that was left on the phone cannot be received by the jury for the purpose of deciding whether the person who sent the message meant anything by it, but you can consider it for whether it would have an effect on Mr. Conley, and whether it would have caused him to take any later action that you might hear about in the case. [¶] But if it does not tie in that way for you, then you can't use the evidence at all. [¶] So I'll let it in just for this limited purpose of allowing you to have information so that you would then have in mind whether Mr. Conley later himself developed a particular state of mind regarding something that is at issue in this case."

Detective Evans testified about several text messages on defendant's phone. The drug expert relied in part on the text messages in reaching his opinion that defendant possessed the marijuana for sale. He explained how some of the text messages related to the sale of drugs.

B. *The Law and Analysis*

Evidence Code section 1200, subdivision (a) defines hearsay as "a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." "Except as provided by law, hearsay evidence is inadmissible." (*Id.* § 1200, subd. (b).) Requests ordinarily do not constitute hearsay because "[a] request, by itself, does not assert the truth of any fact . . . ." (*People v. Jurado* (2006) 38 Cal.4th 72, 117 (*Jurado*).) Prior to *Jurado*, California courts relied on differing theories to hold that phone calls requesting to purchase narcotics are not

11

inadmissible hearsay.  (Compare *People v. Morgan* (2005) 125 Cal.App.4th 935, 940–941 (*Morgan*) with *People v. Nealy* (1991) 228 Cal.App.3d 447, 450-451 (*Nealy*).)

In *Nealy*, police officers testified they answered several phone calls from individuals interested in buying cocaine during their search of the defendant's residence. (*Nealy*, *supra*, at 228 Cal.App.4th at pp. 450-451.)  The court accepted the analogy to calls answered in bookmaking cases.  In those cases, the California Supreme Court had ruled calls to suspected bookmakers were admissible not for the truth of the matter asserted, but as circumstantial evidence of the use to which the telephone was put. (*People v. Fischer* (1957) 49 Cal.2d 442, 447.)  The *Nealy* court concluded the calls were not hearsay, reasoning, "subject to Evidence Code section 352, and appropriate editing, when a police officer participates in a telephone conversation where he is lawfully executing a search warrant and hears a third person offer to purchase a controlled substance, testimony thereon is not made inadmissible by the hearsay rule and may be received as circumstantial evidence tending to show the controlled substance seized at that location was possessed for purposes of sale."  (*Nealy, supra,* at p. 452; see also *People v. Ventura* (1991) 1 Cal.App.4th 1515, 1518-1519.)

In *Morgan*, officers conducting a search warrant intercepted a telephone call made to the defendant in which the caller asked to buy narcotics.  (*Morgan, supra,* 125 Cal.App.4th at p. 939.)  We recognized that such evidence is properly admitted over a hearsay objection, but adopted an alternative theory.  We treated the implied assertion of the caller's statement--that the caller wanted drugs, with the inference that defendant could provide them--as a judicially created exception to the hearsay rule, rather than nonhearsay, based on its unintentional message being presumptively more reliable than a direct assertion.  (*Id*. at p. 944.)

Here, some of the text messages were obvious requests to purchase drugs and, as such, not hearsay.  (*Jurado, supra,* 38 Cal.4th at p. 117.)  Some, such as the expletive, were not hearsay because they were clearly not offered for the truth.  Others, to the extent

the jury considered them for their truth--to show drug dealing arrangements--despite the limiting instruction, were admissible under the analysis of either *Nealy* or *Morgan*. Consequently, there was no abuse of discretion in admitting the text messages.

Nor did the admission of the text messages violate defendant's Sixth Amendment right to confront adverse witnesses, an argument defendant fails to develop properly. (AOB 28)  The confrontation clause applies only to testimonial hearsay.  (*Davis v. Washington* (2006) 547 U.S. 813, 823-826 [165 L.Ed.2d 224].)  Testimonial statements consist of "statements, made with some formality, which, viewed objectively, are for the primary purpose of establishing and proving facts for possible use in a criminal trial." (*People v. Cage* (2007) 40 Cal.4th 965, 984, fn. 14, italics omitted.)  None of the text messages could remotely be viewed as statements made for the purpose of establishing or proving facts at a criminal trial.

## III

### *Instructional Error*

Defendant contends the trial court erred in failing to instruct fully on his medical marijuana defense.  The trial court instructed:  "Qualified patients who associate in order collectively to cultivate marijuana, are not subject to conviction under Health & Safety Code section 11359 or 11360 for activities solely within the purpose of the collective." Defendant contends the court failed to instruct that he was entitled to possess and transport marijuana for his own personal use, as well as for the collective.

With certain exceptions not applicable here, a trial court has a duty to instruct sua sponte on a defense if defendant is relying on the defense or there is substantial evidence to support the defense and it is not inconsistent with defendant's theory of the case. (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1148.)  Here, defendant was relying on the defense to criminal sanctions under sections 11359 or 11360 provided by section 11362.775 for qualified patients, persons with valid identification cards, and their designated primary caregivers who associate in order "collectively or cooperatively to

13

cultivate marijuana for medical purposes." When stopped by police, however, defendant did not mention the collective, but claimed he had a cannabis card and all of the marijuana was his for personal use.

"In considering a claim of instructional error we must first ascertain what the relevant law provides, and then determine what meaning the instruction given conveys. The test is whether there is a reasonable likelihood that the jury understood the instruction in a manner that violated the defendant's rights." (*People v. Andrade* (2000) 85 Cal.App.4th 579, 585.) We find the jury would have understood the court's instruction to provide a defense for the possession and transportation of marijuana that was for defendant's personal medical use as well as for the medical use of *other* members of the collective.

In any event, any error in the instruction was harmless because the jury resolved the key question--the purpose for which defendant possessed and transported marijuana--adversely to him. (See *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 96-97 [error in failing to instruct on lesser included offense harmless, because factual question posed by omitted instruction resolved unfavorably to defendant].) The jury concluded that defendant possessed the marijuana for sale, a finding that is inconsistent with a claim the drugs were possessed only for personal medicinal use. (*People v. Wright* (2006) 40 Cal.4th 81, 98-99 [failure to give medical marijuana defense instruction harmless where jury found possession for sale].)

14

**DISPOSITION**

The judgment is affirmed.


                                        DUARTE            , J.


We concur:



      BLEASE            , Acting P. J.



      BUTZ            , J.

15