[No. C045006. Third Dist. Jan. 12, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANCES NADENE MORGAN et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION[*]]**

---

[*]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I, III, IV and V of the Discussion.

---

**COUNSEL**

Leonard J. Klaif, under appointment by the Court of Appeal, for Defendant and Appellant Frances Nadene Morgan.

Laura P. Gordon, under appointment by the Court of Appeal, for Defendant and Appellant Douglas Roy Brown.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, J. Robert Jibson and Jesse Witt, Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

**MORRISON, J.—** ██ ▪ In this case we consider a question that has intrigued and divided scholars of the law of evidence, namely, whether implied assertions are hearsay. Here, the question arises in a common context. While officers were executing a search warrant for evidence of possession of a controlled substance for sale, an officer answers the phone and hears the caller ask to buy drugs. Are the caller's questions and statements hearsay? We conclude that under the provisions of California's Evidence Code the caller's oral expressions are hearsay, but that case law, recognized and accepted when the Evidence Code was adopted and continuing thereafter, has created an exception to the hearsay rule for this reliable type of evidence.

Defendants Douglas Roy Brown (Brown) and Frances Nadene Morgan (Morgan) were convicted by jury of possession of methamphetamine for sale (Health & Saf. Code, § 11378) and possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)). They were granted probation, subject to certain conditions and jail time. On appeal both contend it was error to admit evidence of a phone call in which a caller sought to purchase methamphetamine. In addition, Brown contends there is insufficient evidence to support his conviction of possession for sale, it was error to exclude his version of the officer's portion of the phone call, and it was error to give CALJIC No. 2.62. Finally, in supplemental briefs, Morgan and Brown contend it was error to convict them of both possession of methamphetamine for sale and the lesser

included offense of possession of methamphetamine. We find merit only in the last contention. We reverse the conviction for possession of methamphetamine and otherwise affirm the judgment.

## FACTS

On January 24, 2003, officers, including narcotics detectives, executed a search warrant to search for evidence of sale of methamphetamine. Brown answered the door when the officers knocked and yelled that the police had arrived.

Upstairs were two bedrooms. Officers found Morgan's son, Ronald, in the second bedroom, drinking a beer. Morgan was lying on the bed in the master bedroom. On the bed was a game board with white powder, a straw, and a credit card on it. Next to the bed Craig Wimberly was sitting at a computer table.

On a table next to the bed was a digital scale. Under the bed was an Elk tobacco tin; inside were a felt baggie, seven plastic baggies with traces of white powder, a plastic baggie with a white powdery substance, and $356. In a purse, officers found Morgan's driver's license, $305, and a day planner. Inside the day planner was a sheet that looked like a ledger with a name across the top and numbers. Detective Dreher opined it was a pay-owe sheet, but he could not be certain. Another alleged pay-owe sheet with many names was found in Morgan's purse. A hypodermic needle was found in a drawer of the computer table.

The parties stipulated .55 gram of methamphetamine was found on the game board and .81 gram of methamphetamine was in the tobacco tin. Dreher testified a usable quantity of methamphetamine was .1 gram. A user typically will use "an eight ball" of 3.0 to 3.5 grams per week. Methamphetamine is commonly sold in the following quantities: .2 gram or a 20 sack, a .16 gram or a teener, and a half teener which is .7 or .8 gram. When told that narcotics had been found in the master bedroom, Brown said it was "all mine."

Scraper bags are plastic bags with methamphetamine residue inside. Users often keep scraper bags to make enough methamphetamine for another hit. Users often have scales to make sure they do not get burned by sellers.

Based on finding the controlled substance, the scale with residue on it, the packaging, the money and the pay-owe sheets, Dreher opined that the

methamphetamine was possessed for sale. He conceded the methamphetamine on the game board was consistent with personal use.

During the search the telephone rang and Detective Ashworth answered it. A male caller asked for Fran and Ashworth told him she was sleeping. The caller said he was "bogeying," which meant in need of drugs, and asked if he had any. Ashworth asked what he needed and the caller said a "half teener." Ashworth asked what he was driving and how long it would take him to get there. The caller said he was in a white T-bird and he would be there in two minutes. Five minutes later Ashworth saw a white Thunderbird in the parking lot.

Morgan's son, Ronald, testified he came home from work the day of the search and checked on his mother because she was ill; she was sleeping and Brown was next to her. Morgan was on permanent disability and slept all the time. She took medications, including vitamin B12 shots with a syringe. Morgan had loaned Ronald money and she was a stickler for recording it. Ronald believed the ledger with the name Ron on it was Morgan's record of that loan.

The parties stipulated Brown's employer would testify he paid Brown $400 that day in cash for wages.

Brown testified the methamphetamine was his and possessed solely for personal use. Morgan was his roommate and girlfriend. He had used methamphetamine for 20 to 25 years. Morgan did not use methamphetamine or like Brown's use. Brown claimed neither he nor Morgan sold methamphetamine. The night of the search Brown came home from work with his pay. He kept $100 and put $300 either in the tobacco tin or in Morgan's purse. He deals exclusively in cash because he has had bad experiences with checks and lacks identification. His friend Wimberly was there playing a computer game. Brown took out his methamphetamine and snorted "a big ol' rail" because he was tired. He intended to use the rest that he had taken out, but the police arrived.

Brown said he did not sell methamphetamine but sometimes people asked him for it. He might share some with friends and expected them to return the favor, but he could not recall the last time he gave someone methamphetamine. He kept scraper bags for hard times. He used the scale for several purposes. He weighed his weed and crank to check on people and also used the scale to weigh "meteorites." The ledgers were from when he and Morgan were collecting money to bail a friend out of jail.

The jury convicted Morgan and Brown of possession of methamphetamine for sale and possession, but acquitted them of unauthorized possession of a hypodermic needle.

## DISCUSSION

### I*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II

Morgan and Brown contend the trial court erred in admitting the evidence of the phone call during the search and further erred in failing to give a limiting instruction. They assert the statements of the caller were hearsay, the statements did not fall within any exception to the hearsay rule, and they were not admitted for a relevant nonhearsay purpose. They further contend admission of the caller's statements violated their rights to confront and cross-examine witnesses under the confrontation clause.

The Attorney General responds that Morgan and Brown waived the hearsay objection by failing to raise it below. We reject this contention.

Before trial the People brought a motion in limine to admit the phone call. Brown moved to exclude the evidence under Evidence Code section 352, arguing the phone call was not probative and was unduly prejudicial as to him because the caller did not mention him. At the hearing on the in limine motion, Brown repeated his objection and Morgan also objected on the basis of Evidence Code section 352 and that admission of the call would violate confrontation rights. The prosecutor argued the statements were circumstantial evidence and would survive a hearsay objection. The trial court ruled the caller's statements were not hearsay. The issue of whether the caller's statements were hearsay was raised and ruled upon by the trial court; a more specific objection would have been superfluous. The hearsay objection is not waived.

In admitting the statements of the caller, the trial court relied upon *People v. Nealy* (1991) 228 Cal.App.3d 447 [279 Cal.Rptr. 36] and *People v. Ventura* (1991) 1 Cal.App.4th 1515 [2 Cal.Rptr.2d 586]. In *Nealy*, during the course of a search, an officer answered the phone and the caller asked for defendant by name and inquired about purchasing a "dove." (*People v. Nealy, supra*, 228 Cal.App.3d at p. 450.) The officer testified a "dove" was a " '$20

---

*See footnote, *ante*, page 935.

piece of rock cocaine.' " The officer also returned two calls on defendant's beeper; the callers asked for defendant and wanted a "dove." (*Ibid.*) The trial court overruled hearsay objections, finding the telephone requests were not offered for the truth of the matters asserted. Instead, the requests were relevant and admissible as circumstantial evidence to show the cocaine seized in the search was possessed for purposes of sale. (*Id.* at p. 451.) The reasoning process was as follows: During the search three people believed rock cocaine could be purchased at the apartment. From these beliefs, a reasonable person might draw the inference that possession of cocaine for sale had been shown. (*Ibid.*) The appellate court agreed with this reasoning and found the trial court's analogy to bookmaking calls, in which calls to place bets were admissible to show a bookmaking operation, was apposite. (*Id.* at p. 452.) The appellate court distilled the following rule: "subject to Evidence Code section 352, and appropriate editing, when a police officer participates in a telephone conversation where he is lawfully executing a search warrant and hears a third person offer to purchase a controlled substance, testimony thereon is not made inadmissible by the hearsay rule and may be received as circumstantial evidence tending to show the controlled substance seized at that location was possessed for purposes of sale." (*Ibid.*)

*Nealy* was followed in *People v. Ventura, supra*, 1 Cal.App.4th 1515. In *Ventura*, officers executed a search warrant on a garage apartment and found narcotics and narcotics paraphernalia. While in the garage, they answered several phone calls asking for defendant and discussing the purchase of narcotics. (*Id.* at p. 1517.) The court rejected a hearsay challenge to this evidence. Defendant attempted to distinguish the bookmaking cases on the basis that the Penal Code prohibited not only bookmaking, but also keeping a premises for the making of bets. In contrast, that the garage was used for narcotics transactions was not at issue; defendant asserted the calls were used to prove the truth of the matter asserted, that defendant occupied the garage and possessed commercial contraband. The appellate court rejected this argument, finding the prosecution was permitted to use circumstantial evidence to prove its case. (*Id.* at p. 1518.) The court distinguished between a testimonial statement, such as " 'George owns the narcotics in the garage and is selling them,' " and the statement, " 'May I speak to George—I want a quarter gram of stuff and an eight-ball,' " which was not hearsay because it was used circumstantially to show the use being made of the premises. (*Id.* at p. 1519.)

Morgan and Brown contend *Nealy, supra,* 228 Cal.App.3d 447, and *Ventura, supra,* 1 Cal.App.4th 1515, were wrongly decided. Brown asserts these cases permit admission of a statement of the caller's belief to be used to prove that belief—that drugs are available for sale. He contends this use of

evidence violates Evidence Code section 1250, subdivision (b), which prohibits the admission of a statement of memory or belief to prove the fact remembered or believed.

Morgan and Brown offer *People v. Scalzi* (1981) 126 Cal.App.3d 901 [179 Cal.Rptr. 61], as a better reasoned case. In *Scalzi*, defendant was at the home of some friends when the police arrived to execute search and arrest warrants. While there, an officer answered three phone calls. He related the contents of one at trial. The caller asked for John (defendant was the only John present) and asked "if John had gotten it bagged up." The officer testified "bagged" was a term for packaging narcotics for sale. (*Id.* at p. 905–907.) The People contended the declarations of the callers were not hearsay because they were offered not to prove their truth, but to show why the officer arrested defendant. The appellate court found the admission of the calls was error because the officer's state of mind was not relevant. (*Id.* at p. 906.) While we find no fault with the reasoning of *Scalzi* on the issues presented therein, we agree with the *Nealy* court that it is not controlling on the issue here because it "did not discuss a well-articulated and lawful theory of admissibility[.]" (*People v. Nealy, supra,* 228 Cal.App.3d at p. 452.) Here, the statements of the caller were not offered to show what the arresting officer did, as in *Scalzi,* but as circumstantial evidence that the drugs found were possessed for sale, as in *Nealy.*

Although *Scalzi, supra,* 126 Cal.App.3d 901, does not aid Morgan and Brown, there is support for their criticism of *Nealy, supra,* 228 Cal.App.3d 447, and *Ventura, supra,* 1 Cal.App.4th 1515. Justice Bernard Jefferson has faulted using circumstantial-evidence reasoning to avoid confronting a hearsay issue. "The exclusionary hearsay rule cannot be circumvented by using the circumstantial-evidence reasoning process of drawing an inference of another person's conduct from a declarant's words. It would appear to be a speculative inference to go from a declarant's state of mind to a third person's conduct. Speculation is involved because there is nothing to indicate the accuracy of the declarant's observation of the conduct of another person, or the accuracy of the declarant's recollection and ability to narrate correctly." (1 Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar 3d ed. 2004) Hearsay and Nonhearsay Evidence, § 1.20, p. 16 (hereafter Jefferson).)

Jefferson sets forth the reasoning in using telephone calls to identify the use of the premises as follows: the caller's express words indicate his belief that the person called is engaged in a criminal activity; from this state of mind belief, the trier of fact may conclude the building is being used in accord with the caller's belief. "The fallacy of this reasoning is that it cannot avoid the implied hearsay principle that evidence of a declarant's express words offered to prove the truth of an implied statement contained in the

express statement is hearsay evidence to the same extent as evidence of express words offered to prove the truth of the matter stated expressly by such words." (Jefferson, *supra,* § 1.23, p. 19.) Jefferson finds the line of cases culminating in *Nealy, supra,* 228 Cal.App.3d 447, and *Ventura, supra,* 1 Cal.App.4th 1515 [2 Cal.Rptr.2d 586], "uses an improper and unsound analysis and cannot be supported in logic or reason. . . . The courts completely ignored the fact that the only relevant purpose for admitting the statement was for the statement that could be *inferred* from the actual words spoken, and therefore the words were hearsay. Merely characterizing the evidence as circumstantial does not make the evidence admissible." (Jefferson, *supra,* § 1.23, p. 19., italics in original.)

Jefferson's criticism is well taken. The caller's statement is hearsay under California law. " 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) "Except as provided by law, hearsay evidence is inadmissible." (Evid. Code, § 1200, subd. (b).) " 'Statement' means (a) oral or written verbal expression or (b) nonverbal conduct of a person intended by him as a substitute for oral or written verbal expression." (Evid. Code, § 225.)

In this case when the man on the phone told Detective Ashworth that "he was bogeying" and then asked him if he "had any," the relevance of this statement is the implication taken from the spoken words. While the ultimate fact the statement is offered to prove is not the matter stated, the truth of the implied statement is a necessary part of the inferential reasoning process. The statement is relevant only if the caller actually wants drugs as he states. If he does not want drugs, and is asking for them only to cause trouble for the defendant or as a crank call, then the call has no relevance because it is not circumstantial evidence that defendant is selling drugs. It is the caller's genuine desire for drugs and his belief that he can obtain them by calling the defendant's number that creates the inference that defendant's drugs are possessed for purposes of sale.

Scholars have long debated whether implied assertions should be considered hearsay. (See, e.g., *Symposium on Hearsay and Implied Assertions: How Would (or Should) The Supreme Court Decide the Kearley Case?* (1995) 16 Miss.C. L.Rev. 1 et seq.) The answer often turns on one's view of the hearsay rule. If one stresses that the purpose of the hearsay rule is to limit admissibility of out-of-court statements without cross-examination because those statements pose dangers for the factfinder with respect to perception, memory, narration and sincerity, one usually believes implied assertions are hearsay. (Mendez, Cal. Evidence (1993) The Hearsay Rule, § 5.05, p. 114; Callen, *Foreword to the First Virtual Forum: Wallace Stevens, Blackbirds and*

*the Hearsay Rule* (1995) 16 Miss.C. L.Rev. 1, 6.) On the other hand, under an assertion-based view of the hearsay rule, which focuses on whether the statement is an assertion, implied assertions are not considered hearsay because they are not express assertions. (Mendez, *California Evidence, supra,* The Hearsay Rule, § 5.05, p. 113; 4 Jones on Evidence (7th ed. 2000) Defining Hearsay, § 24.13, p. 228.) Several California courts have adopted an assertion-based view of hearsay. (*Ibid.*)

The rationale for not treating an implied assertion as an assertion subject to the hearsay rule is that it is primarily conduct and not intended as an assertion. To the extent conduct (here a phone call) rather than simply words are involved, the implied assertion is more reliable. "A man does not lie to himself. Put otherwise, if in doing what he does a man has no intention of asserting the existence or non-existence of a fact, it would appear that the trustworthiness of evidence of his conduct is the same whether he is an egregious liar or a paragon of veracity. Accordingly, the lack of opportunity for cross-examination in relation to his veracity or lack of it, would seem to be of no substantial importance." (Falknor, *The "Hear-Say" Rule as a "See-Do" Rule: Evidence of Conduct* (1961) 33 Rocky Mt.L.Rev. 133, 136.) "One of the principal goals of the hearsay rule is to exclude declarations when their veracity cannot be tested through cross-examination. When a declarant does not intend to communicate anything, however, his sincerity is not in question and the need for cross-examination is sharply diminished. Thus, an unintentional message is presumptively more reliable." (*U.S. v. Long* (D.C. Cir. 1990) 284 U.S. App. D.C. 405 [905 F.2d 1572, 1580].)

This rationale applies to the caller's statements in this case. The caller was not intending to assert that Morgan and Brown were selling methamphetamine; rather, he was attempting to purchase methamphetamine. Because actions speak louder than words, the caller's statements were more reliable than the usual hearsay statement.

The answer to the quandary created by nonassertive statements is not to distort the definition of the hearsay rule and ignore the reality that a request to buy drugs is only relevant if the buyer believes he can buy drugs with his request. The answer is to recognize that the increased reliability of nonassertive statements justify the recognition of an exception to the prohibition on the use of hearsay.

California has long recognized the greater reliability of conduct that is not intended as an assertion. In *People v. Reifenstuhl* (1940) 37 Cal.App.2d 402 [99 P.2d 564] (*Reifenstuhl*), the court upheld the admission of a phone call to defendant placing a bet. "The use of the room occupied by defendant was in issue and the nature of the telephonic call was a circumstance to establish the

truth. The uses to which a telephone is put reveal more truthfully the character of the establishment that houses the instrument than do the words of description attached to the listing." (*Id.* at p. 405.) The California Supreme Court adopted the same reasoning in finding no error in admitting telephone conversations between the arresting officer and those who called the house to place bets in *People v. Fischer* (1957) 49 Cal.2d 442 [317 P.2d 967]. "The use of the room occupied by the defendant was in issue and the nature of the telephonic call was a circumstance to establish that fact. [Citations.]" (*Id.* at p. 447.)

■ This line of cases was recognized and accepted when the Legislature adopted the Evidence Code in 1965. The Law Revision Commission Comments of 1965 note that some California cases regard evidence of nonassertive conduct as hearsay when used to prove the actor's belief in a particular fact as a basis to infer that fact is true, but other cases do not, citing to *Reifenstuhl, supra,* 37 Cal.App.2d 402, as an example of the latter. The comment then explains: "Under the Evidence Code, nonassertive conduct is not regarded as hearsay for two reasons. First, one of the principal reasons for the hearsay rule—to exclude declarations where the veracity of the declarant cannot be tested by cross-examination—does not apply because such conduct, being nonassertive, does not involve the veracity of the declarant. Second, there is frequently a guarantee of the trustworthiness of the inference to be drawn from the nonassertive conduct because the actor has based his actions on the correctness of his belief, i.e., his actions speak louder than words." (Cal. Law Revision Com. com., Deering's Ann. Evid. Code (1986 ed.) foll. § 1200, pp. 440, 441–442.) The reasoning of *Reifenstuhl* was adopted in drug cases such as *Nealy, supra,* 228 Cal.App.3d 447, and *Ventura, supra,* 1 Cal.App.4th 1515. Thus, it is well established in California that when an officer answers the telephone during a search, the caller's statement is admissible over a hearsay objection. In adopting the Evidence Code, or afterwards, the Legislature has not changed this well-established law. Neither Evidence Code section 1200 nor section 1250, subdivision (b), prohibit admission of this evidence.

We disagree with the analysis in the *Reifenstuhl* line of cases, and its reliance on circumstantial-evidence reasoning to show the statement is not hearsay, because the statement meets the statutory definition of hearsay, but we have no quarrel with admitting the caller's statement for the reasons set forth above relating to its reliability, its performance aspect and its unintentional nature. Analytically, we would prefer to treat admission of the caller's statement as an exception to the hearsay rule rather than as nonhearsay. Even though the Legislature failed to codify such an exception in the adoption of

the Evidence Code, such treatment poses no analytical problem because appellate courts have authority to create exceptions to the hearsay rule not found in the Evidence Code. (*In re Cindy L.* (1997) 17 Cal.4th 15, 26–27 [69 Cal.Rptr.2d 803, 947 P.2d 1340].) Accordingly, under either the analysis of *Nealy, supra,* 228 Cal.App.3d 447 and *Ventura, supra,* 1 Cal.App.4th 1515, or our analysis, the caller's statement is admissible over a hearsay objection. We recognize that the dangers of perception, memory, narration and sincerity present in hearsay are not completely eliminated, but "contemporary resolution of the issues involved in 'implied assertions' reflect ultimately a compromise between theory and the need for a relatively simple and workable definition in situations where hearsay dangers are generally reduced." (2 McCormick on Evidence (5th ed. 1999) Hearsay Rule, § 250, p. 113.)

■ We find no violation of the confrontation clause in admitting the caller's statements. Under the traditional view, the statements are not hearsay and raise no confrontation clause concerns. (*Tennessee v. Street* (1985) 471 U.S. 409, 414 [85 L.Ed.2d 425, 431, 105 S.Ct. 2078].) Under our view, the confrontation clause analysis turns on whether the evidence is testimonial. Recently, the United States Supreme Court held that where testimonial evidence is involved the witness must be unavailable and defendant must have had a prior opportunity for cross-examination. (*Crawford v. Washington* (2004) 541 U.S. 36 [158 L.Ed.2d 177, 203, 124 S.Ct. 1354] (*Crawford*).) "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as does [*Ohio v.*] *Roberts* [(1980) 448 U.S. 56 [65 L.Ed.2d 597, 100 S.Ct. 2531]], and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether." (*Id.* at p. 68 [158 L.Ed.2d at p. 203.)

■ The high court declined to spell out a comprehensive definition of "testimonial." Whatever else the term "testimonial" covers, "it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." (*Crawford, supra,* 541 U.S. at p. 68 [158 L.Ed.2d at p. 203].) In discussing the scope of testimonial statements, *Crawford* stated the principal evil at which the confrontation clause was directed was the use of ex parte examinations as evidence against the accused. (*Id.* at p. 50 [158 L.Ed.2d at p. 192].) The court cited various formulations of the core class of testimonial statements:

" '*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants

would reasonably expect to be used prosecutorially,' " " 'extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions,' " " 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]' " (*Id.* at pp. 51–52 [158 L.Ed.2d at p. 193].)

The caller's statements do not fall within any of these definitions. The informal statement made in an unstructured setting does not resemble the police interrogation of concern in *Crawford*. (*Crawford, supra,* 541 U.S. at pp. 52–53 [158 L.Ed.2d at pp. 193–194].) The officer's minimal responses to the caller were not the "[i]nvolvement of government officers in the production of testimony with an eye toward trial [that] presents unique potential for prosecutorial abuse." (Id. at p. 56, fn. 7 [158 L.Ed.2d at p. 196, fn. 7].) That the statement was made to a police officer, albeit unknowingly, does not make it per se testimonial. (*U.S. v. Lopez* (1st Cir. 2004) 380 F.3d 538, 546, fn. 6 [statement made while in custody, but not in response to questioning, is not testimonial]; *People v. Newland* (2004) 6 A.D.3d 330 [775 N.Y.S.2d 308, 309] [brief, informal remark to officer conducting field investigation not testimonial].)[1] The same qualities that lead to the statements' reliability, their performance nature and their unintentional nature, indicate the statements are not testimonial. Accordingly, there is no confrontation clause violation under *Crawford*.

Finally, Brown contends the trial court erred in failing to give a limiting instruction even though the defendants requested one. The only relevant purpose for which the jury could have used the statements was as circumstantial evidence that the methamphetamine was possessed for sale. Because we have found the caller's statement was properly admissible for this purpose, there was no need for a limiting instruction and no error in failing to give one.

III–V*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

[1] In *People v. Corella* (2004) 122 Cal.App.4th 461 [18 Cal.Rptr.3d 770], the Second District held statements made in a 911 call and to the responding officer are not testimonial. We agree with its analysis of this issue.

*See footnote, *ante*, page 935.

## DISPOSITION

The convictions for violating Health and Safety Code section 11377, subdivision (a) are reversed. In all other respects the judgments are affirmed.

Davis, Acting P. J., and Raye, J., concurred.

Appellants' petitions for review by the Supreme Court were denied April 20, 2005. George, C. J., did not participate therein.