**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : No. 45 MAP 2012 |
| | : |
| Appellant | : Appeal from the order of Superior Court at |
| | : No. 1669 MDA 2010, entered 09-16-2011, |
| | : reconsideration denied 11-22-2011, |
| | : reversing and remanding the judgment of |
| v. | : sentence of the Cumberland County Court |
| | : of Common Pleas, Criminal Division, at |
| | : No. CP-21-CR-2876-2009, dated 07-20- |
| | : 2010 |
| | : |
| | : 39 A.3d 996 (Pa. Super. 2011) |
| AMY N. KOCH, | : |
| | : ARGUED: October 16, 2012 |
| Appellee | : RE-SUBMITTED: February 19, 2014 |

**OPINION IN SUPPORT OF REVERSAL**

**MR. JUSTICE SAYLOR**                    **DECIDED: December 30, 2014**

I am in alignment with Mr. Justice Eakin's Opinion in Support of Reversal relative to the authenticity issue, as well as its reasoning that the messages were properly authenticated as being drug-related and sent to and from Appellee's phone. Accordingly, I too would reverse the Superior Court. However, as to the authorship aspect of authentication, I have reservations with the notion that "any question concerning the actual author or recipient of the text messages bore on the evidentiary weight to be afforded them." Opinion in Support of Reversal, slip op. at 1 (Eakin, J., joined by Stevens, J.). In this regard, my view is closer to that expressed in Mr. Chief Justice Castille's Opinion in Support of Affirmance, namely, that authorship is a relevant

consideration in most electronic communication authentication matters. See Opinion in Support of Affirmance, slip op. at 14-16 (Castille, C.J.). As it concerns the present matter, my position in support of reversal is grounded in the Commonwealth's offer of the messages at trial, which did not rely on who drafted the messages (a fact that the Commonwealth readily conceded it could not demonstrate), but rather as circumstantial evidence of Appellee's complicity in dealing drugs in the same way that drug records or receipts may be relevant.

As it pertains to the hearsay question, I believe the reasoning advanced in Justice Eakin's Opinion in Support of Reversal is materially incomplete; it concludes, on the basis of one example - "tree looks good" - that all of the text messages were non-hearsay, since they were not offered to prove the truth of the matter asserted. Opinion in Support of Reversal, slip op. at 3 (Eakin, J.).[1] In my view, this reliance on a single example overlooks the hearsay concerns implicated by other messages and fails to account for one text message that, indeed, was offered to prove its assertion.

The Commonwealth's primary argument is that the text messages stored on Appellee's cell phone were offered into evidence, not for the truth of the matters asserted in them, but rather, solely to show that statements pertaining to illegal drugs were made utilizing Appellee's cell phone.[2] In terms of the elements of the hearsay

---

[1] The testifying detective explained that "tree" is code for marijuana. See N.T., May 26-27, 2010, at 87.

[2] Parenthetically, in its present brief, the Commonwealth advances the theory that, even if the text messages in issue amount to hearsay, they were admissible under various exceptions to the hearsay rule, including those pertaining to admissions and coconspirator's statements. See Pa.R.E. 803(25). These bases, however, do not appear to have been advanced in the trial and intermediate courts and, in any event, are plainly outside the scope of the issues on which appeal was allowed by this Court. See Commonwealth v. Koch, 615 Pa. 612, 44 A.3d 1147 (2012) (per curiam).

rule, the Commonwealth's position appears to be that the messages should not be regarded as containing any "assertions" at all, but rather, they merely reflect the subject matter of the participants' conversation (i.e., illegal drugs). Pa.R.E. 801(a) (defining "statement," for purposes of the rule against hearsay, in terms of assertive verbal or non-verbal conduct).

The rule against hearsay and the expansive scheme of exceptions that has evolved around it have been roundly criticized on various fronts. See, e.g., IRVING YOUNGER, ABA SECTION OF LITIGATION MONOGRAPH SERIES NO. 3, AN IRREVERENT INTRODUCTION TO HEARSAY 18-19 (ABA Press 1977) ("I put to you that any rule which begins by telling us that hearsay is not admissible, but which ends with a dozen major exceptions and a list of about a hundred exceptions all told, is not much of a rule."); id. at 20 (describing the author's practice of arranging the hearsay exceptions "in ascending order of absurdity"); Edmund M. Morgan & John M. Maguire, Looking Backward and Forward at Evidence, 50 HARV. L. REV. 909, 921 (1937) (positing that the exceptions to the hearsay rule resemble "an old-fashioned crazy quilt made of patches cut from a group of paintings by cubists, futurists and surrealists"). Putting aside controversies about the exceptions, the general hearsay rule itself is problematic on account of the difficulty in distinguishing between speech which is assertive and that which is to be regarded as non-assertive. See 4 JONES ON EVIDENCE §24.12 n.40 (7th ed. 2013) ("No authoritative single definition of the distinction between assertive and nonassertive verbal conduct exists." (quoting Roger C. Park, "I Didn't Tell Them About You": Implied Assertions as Hearsay Under the Federal Rules of Evidence, 74 MINN. L. REV. 783, 794 (1990))).

For example, speech often contains underlying information or assumptions in the nature of implied assertions, and courts and rulemakers in various jurisdictions have

taken differing approaches to these. Much of the older common law would seem to hold that implied assertions are hearsay, at least where used to prove the truth of the matter to be taken as impliedly asserted. In this regard, English courts seem to recognize that conversations similar to those presently in issue implicate the rule against hearsay on the basis that they contain implied assertions. Along these lines, in Regina v. Kearley, [1992] 2 A.C. 228 (H.L.) (U.K.), a jurist discussed the implied assertions in one such conversation as follows:

> [The government] frankly concedes that if the inquirer had said in the course of making his request "I would like my usual supply of amphetamine at the price which I paid you last week" or words to that effect, then although the inquirer could have been called to give evidence of the fact that he had in the past purchased from the appellant his requirement of amphetamine and had made his call at the appellant's house for a further supply on the occasion when he met and spoke to the police, the hearsay rule prevents the prosecution from calling police officers to recount the conversation which I have described. This is for the simple reason that the request made in the form set out above contains an express assertion that the premises at which the request was being made was being used as a source of supply of drugs and the supplier was the appellant.
>
> If, contrary to the view which I have expressed above, the simple request or requests for drugs to be supplied by the appellant, as recounted by the police, contains in substance, but only by implication, the same assertion, then I can find neither authority nor principle to suggest that the hearsay rule should not be equally applicable and exclude such evidence. What is sought to be done is to use the oral assertion, even though it may be an implied assertion, as evidence of the proposition asserted. That the proposition is asserted by way of necessary implication rather than expressly cannot, to my mind, make any difference.

Regina v. Kearley, [1992] 2 A.C. 228 (H.L.) 254-55 (Ackner, J.) (U.K.) (emphasis added), quoted in David E. Seidelson, Implied Assertions and Federal Rule of Evidence

801: A Continuing Quandary for Federal Courts, 16 MISS. C. L. REV. 33, 50-51 (1995); cf. United States v. McGlory, 968 F.2d 309, 332 (3d Cir. 1992) (explaining, in the implied assertion context, that the court "disfavored the admission of statements which are not technically admitted for the truth of the matter asserted, whenever the matter asserted, without regard to its truth value, implies that the defendant is guilty of the crime charged.").

In the United States, however, a strong countercurrent has emerged, as reflected in an advisory committee note to the Federal Rules of Evidence (upon which, notably, the Pennsylvania Rules of Evidence were, in large part, modeled). According to the advisory committee,

> The effect of the definition of "statement" is to exclude from the operation of the hearsay rule all evidence of conduct, verbal or nonverbal, not intended as an assertion. The key to the definition is that nothing is an assertion unless intended to be one. . . .
>
> . . . Similar considerations govern nonassertive verbal conduct and verbal conduct which is assertive but offered as a basis for inferring something other than the matter asserted, also excluded from the definition of hearsay by the language of subdivision (c).

Fed.R. Evid. 801 advisory committee's note; accord United States v. Boswell, 530 Fed. Appx. 214, 216 (4th Cir. 2013) (taking the position that a text message containing a drug solicitation was non-hearsay); United States v. Rodriguez-Lopez, 565 F.3d 312, 314-15 (6th Cir. 2009) (holding that drug solicitations directed to a defendant's cell phone, answered by an arresting officer, were not hearsay).

The federal advisory committee's approach to the text of Federal Rule of Evidence 801 has been criticized as "lend[ing] itself to a rigid literalism which can produce absurd results," and as "ignor[ing] how difficult it sometimes is to distinguish

verbal conduct that is assertive from that which is nonassertive." 4 JONES ON EVIDENCE §24.12; cf. Christopher B. Mueller & Laird C. Kirkpatrick, 4 FED. EVID. §8.6 (4th ed. 2013) (denoting a constrained approach to defining the boundaries of assertive verbal or non-verbal conduct as "almost certainly wrong").[3]  Nevertheless, Pennsylvania Rule of Evidence 801 is patterned after its federal analogue and, although the specific language from the federal advisory committee was not incorporated into the commentary, such comments reflect a categorical and literalistic approach which would appear to exclude implied assertions from the reach of the hearsay rule in a broad range of contexts.  See, e.g., Pa.R.E. 801, cmt. (indicating that "questions, greetings, expressions of gratitude, exclamations, offers, instructions, warnings, etc." simply are not hearsay, without reference to the fact that such verbalizations may contain strong implied assertions).[4]

In the present matter, Justice Eakin's Opinion in Support of Reversal concludes that the "messages were offered to demonstrate activity involving the distribution or

---

[3] Consistent with these criticisms, and in a factual context similar to the present case, one court reasoned as follows:

> The text messages here purport to be expressions of a desire to engage in a drug transaction.  This is a drug case. We therefore disagree with the State that the text messages were not offered for the truth of the matter asserted.

Black v. State, 358 S.W.3d 823, 831 (Tex. Ct. App. 2012).  Some commentators also express the concern that implied assertions arguably impose higher risks of inaccuracy and ambiguity than direct ones.  See, e.g., State v. Palmer, 270 P.3d 891, 900-01 (Ariz. Ct. App. 2012) (Eckstrom, P.J., dissenting) (collecting articles).

[4] While our rules, in this regard, may appear to be vulnerable to the criticism that they are more reflexive than analytical, it should be noted that trial judges are invested with discretion to exclude evidence (including statements containing implied assertions), where the probative value is outweighed by dangers of unfair prejudice, confusion of the issues, or misleading jurors.  See Pa.R.E. 403.

intent to distribute drugs and the relationship between the parties sending and receiving the messages [and, thus] were not hearsay statements." Opinion in Support of Reversal, slip op. at 3 (Eakin, J.) (citations omitted). As it pertains to the relationship aspect, I agree that the message sent from the phone to a number listed as "Matt" (identified as one of Appellee's alleged co-accomplices) was properly admitted as non-hearsay, since the relationship of the parties is demonstrated by the name of the contact (i.e., "Matt") and not any assertion in the accompanying drug-related message, "can I get that other o from u." R.R. at 226.[5, 6]

Relative to the Commonwealth's proffer of the messages as evincing drug distribution, I would conclude that one message sent from the phone, "I got a nice gram of that gd julie to get rid of dude didn't have enuff cash so I had to throw in but I cant keep it 8og," asserts the very matter for which it was offered. Id. The testifying detective explained that "julie" is a reference to cocaine, and that the sender had used his own money to buy some cocaine, but needed to sell it. See N.T., May 26-27, 2010, at 85. Stated plainly, the assertion of this message is that the sender possesses drugs with the intent to sell them. Thus, the assertion is the same as what the Commonwealth attempted to prove true, namely, possession with the intent to distribute an illegal substance. In my view, this corresponds to the commonly understood definition of hearsay as an "out-of-court statement offered to prove the truth of the matter asserted." Pa.R.E. 801, cmt.

---

[5] In any event, the message is phrased as a question, which, as explained by the comments to Rule 801, means that it is not an assertion and, thus, not hearsay. See Pa.R.E. 801, cmt. ("Communications that are not assertions are not hearsay. These would include questions, greetings, expressions of gratitude, exclamations, offers, instructions, warnings, etc.").

[6] The detective explained that "o" is a reference to an ounce, a commonly used weight measurement for illicit drugs. See N.T., May 26-27, 2010, at 86.

On the whole, it may be worth considering refinements to our evidentiary rules based on accumulating wisdom and reflection.[7] For the present, however, I do not believe the hearsay rule in Pennsylvania operates to preclude the admission into evidence of implied assertions such as those arising from at least the majority of the text messages in issue here. Thus, I am of the view that, although one message was improperly admitted, the other drug-related messages and the other circumstantial evidence of drug distribution obviate the need for a new trial under the harmless error standard. See Commonwealth v. Johnson, 576 Pa. 23, 41-42, 838 A.2d 663, 674 (2003) (explaining that an error in admitting hearsay evidence is harmless where such evidence is cumulative of other untainted, substantially similar evidence). Accordingly, I would reverse the Superior Court's order relative to the hearsay issue.

---

[7] In such an undertaking, however, it would also be worth considering the perspective that implied assertions arising out of performance-based or instrumental verbal conduct (such as drug solicitations) should be treated as non-hearsay, at least where the assertive quality of the speech fairly can be viewed as subordinate to the instrumental aspect. See, e.g., Mueller & Kirkpatrick, 4 FED. EVID. §8:24; accord People v. Morgan, 23 Cal. Rptr. 3d 224, 229-30 (Cal. Ct. App. 2005) (treating drug-solicitation text messages as primarily conduct-based as opposed to assertive).