Filed 5/4/15  P. v. Barnard CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DAVID BARNARD,<br><br>    Defendant and Appellant. | G049319<br><br>(Super. Ct. No. 13WF0282)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Steven D. Bromberg, Judge.  Affirmed.

Alison Minet Adams for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Brendon W. Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

INTRODUCTION

Defendant David Barnard appeals from the judgment entered after a jury found him guilty of possessing methamphetamine for sale, transporting methamphetamine, possessing heroin for sale, and transporting heroin.

We affirm. Each of Barnard's contentions of error is without merit. In summary: (1) even if Barnard's statement admitting that a cell phone belonged to him should have been excluded under *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*), such error was harmless; (2) substantial evidence supported each of Barnard's convictions; (3) the court did not err by admitting text messages observed by a police officer on a cell phone found during a search of Barnard's car; (4) the court did not err by excluding evidence of the gang rape and beating Barnard had allegedly suffered while incarcerated a few years before trial; and (5) the court did not err in refusing to grant Barnard's request for a split sentence which would have included drug treatment time.

FACTS

At 11:37 p.m. on January 27, 2013, Officer Timothy Emanuel of the Huntington Beach Police Department was assisting a fellow officer in conducting a traffic stop when he noticed a Nissan parked across the street. Emanuel saw Barnard sitting in the passenger seat and a woman walking back and forth three or four times between the driver's seat of the Nissan and a nearby liquor store. She appeared animated and her walking was exaggerated. Emanuel continued to watch the woman as she got into the Nissan, drove across three lanes of heavy traffic, and then made a U-turn without signaling.

Emanuel initiated a traffic stop of the Nissan. Another officer, identified in the record as "Officer Crawley," assisted him. Emanuel walked up to the driver's side to speak with the driver while Crawley approached the passenger side to talk with Barnard. Emanuel saw an open bottle of whiskey next to the driver. He asked the driver to step out of the car so he could conduct an exam to determine whether she was under the influence.

Crawley asked Barnard to whom did the Nissan belong; Barnard told Crawley that he was its registered owner. A check of the Nissan's registration confirmed that Barnard was the registered owner. Crawley asked Barnard to step out of the car.

Crawley searched Barnard and removed a bundle of money in the amount of about $3,000 from the neck of one of his socks and about $289 from his pants pocket. The money found in Barnard's sock contained miscellaneous denominations—everything from $1 bills to $100 bills, but there was "a large abundance of $20 bills." The officers detained Barnard, seating him on the curb with the driver.

Emanuel testified the neck of a sock is an "uncommon place" for someone to carry a "bulk amount of the cash." He stated, "it's been my experience that drug users or drug dealers will keep a large sum of money like that out of a conventional spot. The reason being is that people that sell drugs oftentimes can be robbed, and so it's easier for him to hand the person, say, the $300, which was exhibit 2, in their pocket than the $3,000 which is in their sock. So they will often separate and break up their money like that."

Emanuel found a digital scale on the floorboard of the car where Barnard had been seated; it had a brown tar-like substance that appeared to have melted to the

surface of it. Emanuel, a certified drug recognition expert, testified that the substance resembled heroin. He testified that scales are commonly used for selling narcotics.

Emanuel smelled marijuana in the Nissan, but did not find any marijuana. As he was searching, he noticed a cell phone that was attached to the charger in the center console. Its face screen started lighting up and it appeared to be receiving several text messages. Emanuel saw on the illuminated screen "words that are common in drug terminology for sales." He testified, "[f]or instance, one of the text messages asked if the person could, quote, 'get a gram,' closed quote, and the other quote referred to somebody asking for a, quote, 'ounce,' closed quote."

Emanuel asked Barnard, who was still seated on the curb, if the cell phone belonged to him; Barnard answered in the affirmative. Emanuel tried to look at other text messages, but he could not because of the automatic locking feature on the cell phone and because the battery was almost dead. He later asked Barnard for the password to gain access to the phone; Barnard told Emanuel the phone was not his. Emanuel did not gain access to that cell phone. Emanuel found another cell phone, near the driver's seat, that belonged to the driver.

Emanuel suspected that Barnard was a drug dealer. Knowing that drug dealers usually hide drugs in their undergarments, Emanuel had Barnard stand up. Emanuel noticed an "unnatural bulge" in Barnard's pants. In Barnard's underwear, Emanuel found a bag of heroin (with a gross weight, including packaging, of 12 grams) and two bags of methamphetamine (each weighing 13.5 grams net).

Emanuel testified that the presence of "[t]he methamphetamine is significant because oftentimes when you see somebody that is possessing two packages of the same quantity you get an idea that that's what they're selling, they're selling a specified weight so they can keep track of their sales, so the person that they're buying—I'm sorry, they're selling to knows exactly what they're getting. So the fact that there is

two bags, both with 13.5 grams of methamphetamine in them, indicates it was planned and weighed out in that manner."

Emanuel testified a user typically uses about two-tenths of a gram, so the amount of methamphetamine Barnard had in his underwear constituted more than 130 doses of methamphetamine. Emanuel stated that is not the kind of quantity a user has on hand but instead was "far in excess" of the amount someone who is "simply a user" of methamphetamine would have with him or her.

After the drugs were removed from Barnard's underwear, Emanuel told Barnard he was under arrest for possession of drugs for sale and transporting drugs.

PROCEDURAL HISTORY

Barnard was charged in an information with one count each of possessing heroin for sale in violation of Health and Safety Code section 11351; selling or transporting heroin in violation of Health and Safety Code section 11352, subdivision (a); possessing methamphetamine for sale in violation of Health and Safety Code section 11378; and selling or transporting methamphetamine in violation of Health and Safety Code section 11379, subdivision (a). The information alleged Barnard, on three separate occasions, had been previously convicted of second degree burglary for each of which he served a separate prison term within the meaning of Penal Code section 667.5, subdivision (b). The information further alleged he was previously convicted of buying, receiving, or concealing stolen property for which he served a separate prison term within the meaning of Penal Code section 667.5, subdivision (b).

The jury found Barnard guilty of all four counts as charged. Barnard admitted the prior prison term allegations. The trial court sentenced Barnard to a total prison term of six years in the county jail. Barnard appealed.

DISCUSSION

I.

EVEN ASSUMING BARNARD'S STATEMENT THAT THE CELL PHONE BELONGED TO HIM
SHOULD HAVE BEEN EXCLUDED UNDER *MIRANDA*, ANY ERROR IN ADMITTING THAT
STATEMENT WAS HARMLESS.[1]

Barnard argues the trial court erred by admitting evidence that he stated, in response to Emanuel's question, that the cell phone receiving text messages was his. Barnard contends he was in custody at the time he made the statement and had not yet been advised of his rights under *Miranda*. If the police take a suspect into custody and then ask the suspect questions without administering *Miranda* warnings, the suspect's responses cannot be introduced into evidence to establish guilt. (*Berkemer v. McCarty* (1984) 468 U.S. 420, 429.)

We do not need to decide whether the trial court erred by denying Barnard's motion to suppress his statement and by admitting that evidence at trial because, even if a *Miranda* violation had occurred, the admission of Barnard's prewarning statement was harmless. Admission in evidence of statements obtained in violation of *Miranda* is subject to the harmless error standard of *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*), which requires the error to be harmless beyond a reasonable doubt. (*Arizona v. Fulminante* (1991) 499 U.S. 279, 310; *People v. Neal* (2003) 31 Cal.4th 63, 86.)

Under the *Chapman* test, error is harmless when it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (*Chapman*, *supra*, 386 U.S. at p. 24.) "*Chapman* . . . made clear that 'before a federal

---

[1] Barnard filed a supplemental opening brief arguing that search and seizure principles were violated when his cell phone was searched. Barnard's argument is without merit as Emanuel only observed text messages that spontaneously appeared on the cell phone screen as they were being received; he could not unlock the cell phone to access or otherwise search its contents or stored data.

constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.' The Court has the power to review the record de novo in order to determine an error's harmlessness. [Citations.] In so doing, it must be determined whether the State has met its burden of demonstrating that the admission . . . to [the officer] did not contribute to [Barnard]'s conviction. [Citation.]" (*Arizona v. Fulminante*, *supra*, 499 U.S. at pp. 295-296.)

"'To say that an error did not contribute to the ensuing verdict is . . . to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.'" (*People v. Neal*, *supra*, 31 Cal.4th at p. 86.) "Thus, the focus is what the jury actually decided and whether the error might have tainted its decision." (*People v. Neal*, *supra*, at p. 86.)

Our de novo review of the record leads us to conclude that if the trial court erred by receiving in evidence Barnard's prewarning statement, that error was unimportant in relation to the overwhelming evidence establishing Barnard as transporting and possessing for sale methamphetamine and heroin. This evidence includes (1) Barnard is the registered owner of the Nissan in which he was riding at the time Emanuel conducted the traffic stop; (2) the cell phone displaying text messages requesting a gram or an ounce was charging in the center console of the Nissan; (3) a digital scale with a tar-like substance that Emanuel testified was likely heroin was found on the floorboard where Barnard had been sitting; (4) Barnard had about $3,000 in his sock and another $289 more accessibly placed in his pants pocket; (5) although several denominations were present, there was a large abundance of $20 bills; (6) consistent with drug dealers' conduct, Barnard hid drugs in his underwear; (7) the drugs found in Barnard's underwear included two bags of methamphetamine in identical amounts (13.5 grams each) and one bag of heroin containing 12 grams; and (8) the amount of methamphetamine found in Barnard's underwear, enough for 130 doses, far exceeded the amount that would be found on someone who is simply a user.

7

Whether the cell phone displaying the text messages belonged to Barnard was not important in light of the overwhelming evidence presented that he was engaged in transporting and possessing for sale both methamphetamine and heroin. It is beyond a reasonable doubt that any *Miranda* violation in admitting Barnard's statement did not contribute to the verdicts.

II.

SUFFICIENT EVIDENCE SHOWED THE DRUGS WERE
POSSESSED OR TRANSPORTED FOR SALE.

Barnard argues there was insufficient evidence to support his convictions for transporting heroin and methamphetamine and possessing them for sale. "In considering a challenge to the sufficiency of the evidence . . . , we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' [Citation.]" (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60.)

We may reverse for lack of substantial evidence only if "'upon no hypothesis whatever is there sufficient substantial evidence to support'" the conviction. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Barnard argues, "the evidence was insufficient that the drugs were possessed or transported for sale because there was no evidence of packaging for sale or of any intent to exchange the drugs for money or anything of value." (Capitalization & boldface omitted.) Barnard's substantial evidence challenge is without merit.

8

As for Barnard's convictions for the transportation of methamphetamine and heroin offenses, the prosecution was not required to prove the drugs were transported for the purpose of sales. The jury was instructed with CALCRIM No. 2300 on those offenses as follows: "The defendant is charged with transporting heroin in Count 2 and transporting methamphetamine in Count 4, both controlled substances, in violation of Health and Safety Code Sections 11352(a) (heroin) and 11379(a) (methamphetamine)[.] [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant transported a controlled substance; [¶] 2. The defendant knew of its presence; [¶] 3. The defendant knew of the substance's nature or character as a controlled substance; [¶] 4. The controlled substance was heroin (Count 2) or methamphetamine (Count 4); [¶] AND [¶] 5. The controlled substance was in a usable amount. [¶] A person transports something if he or she carries or moves it from one location to another, even if the distance is short. [¶] A usable amount is a quantity that is enough to be used by someone as a controlled substance. Useless traces or debris are not usable amounts. On the other hand, a usable amount does not have to be enough, in either amount or strength, to affect the user. [¶] The People do not need to prove that the defendant knew which specific controlled substance he transported. [¶] A person does not have to actually hold or touch something to transport it. It is enough if the person has control over it/ or the right to control it, either personally or through another person."

In his opening brief, Barnard acknowledges, "[t]here is no doubt that Barnard had drugs in his possession." He does not challenge CALCRIM No. 2300 or argue that any of the elements specified in that instruction were unsupported by substantial evidence at trial. Indeed, substantial evidence supported each element.

As for the possession for sale offenses, the jury was instructed with CALCRIM No. 2302, in part, as follows: "The defendant is charged with possession for sale of heroin in Count 1 and possession for sale of methamphetamine in Count 3, both controlled substances, . . . in violation of Health and Safety Code Sections 11351 (heroin)

9

and 11378 (methamphetamine). [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant possessed a controlled substance; [¶] 2. The defendant knew of its presence; [¶] 3. The defendant knew of the substance's nature or character as a controlled substance; [¶] 4. When the defendant possessed the controlled substance, he intended to sell it; [¶] 5. The controlled substance was heroin (Count 1) or methamphetamine (Count 3); [¶] AND [¶] 6. The controlled substance was in a usable amount. [¶] Selling for the purpose of this instruction means exchanging heroin or methamphetamine for money, services, or anything of value."

Barnard's sufficiency of the evidence challenge is limited to a challenge of the fourth element—whether he intended to sell the heroin and methamphetamine. As discussed *ante*, there is more than substantial evidence supporting the jury's finding Barnard possessed the drugs for the purpose of selling them. That evidence includes the digital scale with likely heroin residue found on the floorboard of Barnard's car, near to where he was sitting; the large amount of money hidden in Barnard's sock; the two bags containing equal (and large) amounts of methamphetamine and one bag containing a large amount of heroin secreted in Barnard's underwear; and the text messages appearing on the cell phone charging in the center console, asking for an "ounce" and a "gram."

Barnard points to the absence of any packaging material that would enable him to break down the drugs into smaller saleable amounts and the absence of pay/owe sheets. Evidence of packaging material and pay/owe sheets would certainly provide further support for a conviction of possession for sale, but such evidence is not required to support such a conviction.

III.

BARNARD'S CONTENTIONS OF EVIDENTIARY ERROR ARE WITHOUT MERIT.

Barnard also argues that the trial court erred by admitting Emanuel's testimony regarding the text messages he had seen on the cell phone in Barnard's car and by excluding evidence about the nature and severity of injuries Barnard had suffered

10

while he was incarcerated a few years before trial. "We review a trial court's rulings on the admission and exclusion of evidence under the abuse of discretion standard." (*People v. Thompson* (2010) 49 Cal.4th 79, 128.) Barnard's arguments are without merit.

A.

*The Trial Court Properly Admitted Emanuel's Testimony*
*Regarding the Text Messages.*

Barnard argues the trial court should have excluded Emanuel's testimony regarding the text messages on the cell phone because (1) it lacked foundation, (2) "under the secondary evidence rules, Evidence Code section 1521(a)(1)[,] . . . there is a genuine dispute concerning material terms of the writing and . . . justice required the exclusion," (3) it constituted inadmissible hearsay, and (4) it violated the confrontation clause of the United States Constitution.

Barnard objected to the admission of that testimony on the ground it lacked foundation. The prosecution laid sufficient foundation that the text messages seen by Emanuel were displayed on a cell phone charging in the center console of Barnard's car in which Barnard was seated at the time of the traffic stop. The trial court did not abuse its discretion by overruling Barnard's foundation objection to that testimony.

Assuming Barnard has not forfeited his other arguments challenging the admission of that evidence for failure to raise them in the trial court, they are without merit. Oral testimony of the content of a writing is admissible under the secondary evidence rule "if the proponent does not have possession or control of a copy of the writing and the original is lost or has been destroyed without fraudulent intent on the part of the proponent of the evidence." (Evid. Code, § 1523, subd. (b).) Here, there is no dispute regarding the words in the text messages that Emanuel had seen on the screen of the cell phone.

Furthermore, the evidence regarding the two text messages briefly seen by Emanuel was not offered for the truth of the matter asserted and therefore, traditionally,

11

does not constitute hearsay. (*People v. Morgan* (2005) 125 Cal.App.4th 935, 945 (*Morgan*) ["Thus, it is well established in California that when an officer answers the telephone during a search, the caller's statement is admissible over a hearsay objection."] In *Morgan*, *supra*, 125 Cal.App.4th at pages 945-946, the appellate court held it would "prefer to treat admission of the caller's statement as an exception to the hearsay rule rather than as nonhearsay" and that "[e]ven though the Legislature failed to codify such an exception in the adoption of the Evidence Code, such treatment poses no analytical problem because appellate courts have authority to create exceptions to the hearsay rule not found in the Evidence Code." Under either view, the incoming text messages were admissible.

Barnard argues such evidence violates the confrontation clause under *Crawford v. Washington* (2004) 541 U.S. 36. His argument is without merit. In *Morgan*, *supra*, 125 Cal.App.4th at pages 939-940, 946, the defendants challenged the admission of evidence of the statements made by a caller, seeking to purchase drugs, to a police officer who answered the phone. The appellate court found the admission of that evidence did not violate the confrontation clause, explaining: "Under the traditional view, the statements are not hearsay and raise no confrontation clause concerns. [Citation.] Under our view, the confrontation clause analysis turns on whether the evidence is testimonial." *(Id.* at p. 946.)

The court in *Morgan*, *supra*, 125 Cal.App.4th at page 947, further explained that in the case before it: "The informal statement made in an unstructured setting does not resemble the police interrogation of concern in *Crawford*. [Citation.] The officer's minimal responses to the caller were not the '[i]nvolvement of government officers in the production of testimony with an eye toward trial [that] presents unique potential for prosecutorial abuse.' [Citation.] That the statement was made to a police officer, albeit unknowingly, does not make it per se testimonial. [Citations.] The same qualities that lead to the statements' reliability, their performance nature and their

12

unintentional nature, indicate the statements are not testimonial. Accordingly, there is no confrontation clause violation under *Crawford*." (Fn. omitted.)

Here, Emanuel testified only about the text messages that were displayed across the screen of the cell phone found in Barnard's car. There was no discussion between Emanuel and the senders of the text messages. The text messages were not testimonial under the circumstances of this case and did not violate the confrontation clause.

B.

*The Trial Court Did Not Err by Excluding Evidence of the Nature and Severity of Barnard's Injuries That Led to a Civil Settlement.*

Barnard sought to admit evidence that he received a substantial civil settlement as a result of a gang rape, sexual assault, and physical abuse that he alleged he had endured while in custody a few years before trial. Barnard wished to establish that the civil settlement obviated his need to sell drugs to make a living, and thus support his defense theory he had the drugs for his personal use only. He intended to introduce evidence of the circumstances leading to the civil settlement, namely, the nature and severity of the injuries he had suffered, to explain his two-gram-a-day drug habit, and to further support his defense theory he possessed a significant amount of drugs for his personal use only.

The trial court ruled that evidence of the circumstances surrounding the civil settlement was not relevant to the charged offenses. The court noted that even if relevant, that evidence would not be admitted because it created "a danger of undue prejudice because now you bring in the issue of or attempting to bring in the issue of sympathy. It confuses the issue, it confuses the charge, and now sympathy is again jumping into that picture."

Barnard argues the trial court erred because "[e]vidence of the extent and duration of his physical and mental suffering and the extent and duration of the relief he

13

obtained from the drugs was relevant to support the amount of painkiller (heroin) and stimulant (methamphetamine) he was using and would have allowed him to explain why he sometimes needs more, sometimes less."

We cannot conclude the trial court abused its discretion by excluding the evidence of Barnard's injuries. Evidence regarding the nature and severity of the circumstances leading to his civil settlement was irrelevant to whether Barnard possessed the heroin and the methamphetamine for sale. Barnard did not make an offer of proof in the trial court of, and does not argue on appeal, the existence of evidence linking those circumstances with his claimed "extensive" personal drug habit. In any event, even if the evidence were relevant, the trial court properly excluded it as unduly prejudicial. Its minimal relevance would have been substantially outweighed by the risk it would confuse the jury and engender sympathy for Barnard. We find no error.

IV.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING BARNARD'S REQUEST FOR A SPLIT SENTENCE.

Barnard argues, "[a]t sentencing Barnard requested a split sentence . . . a period of incarceration followed by drug treatment." Barnard cited the drinking driver program he had begun and his two-gram-a-day habit of methamphetamine and heroin, which he had begun after he was raped and beaten while in custody. He argues the trial court erred by finding no factors in mitigation, and denying his request for a split sentence.

"The sentencing court has considerable discretion in imposing such a so-called 'split' or 'blended' sentence under [Penal Code] section 1170, subdivision (h)(5)(B)." (*People v. Clytus* (2012) 209 Cal.App.4th 1001, 1009.)[2] The trial court did not abuse its discretion in imposing sentence.

_____

[2] Citing Penal Code section 4018, subdivision (h), Barnard argues the trial court erred by finding no factors in mitigation and denying his request for a "split sentence."

14

At the sentencing hearing, the trial court explained:

"It's heartbreaking in this court time after time when we have family members, we have mothers . . . come in, because they become a true victim of what goes on here. . . . [T]hey've tried the best that they can do, and they couldn't get it done. So then they look to us to get it done because there is a sense that we can do it for them. We can't. There has to be a meeting somewhere between the defendant and whoever else, whether it's a court, a relative, some authority figure, to try to make it happen.

"He has shown a history year after year his entire adult life, almost, of just not doing that. If the court could wave a magic wand and say, 'fine, I'm going to put you into treatment and make something happen,' we would do that. It doesn't work that way, though. You have to want to do it.

"This court goes out of its way to not put people in custody or incarceration, whether it's jail or prison, because they're addicted to drugs. I'm trying to remember if and when I even did it. If I did it, it was probably on numerous, and I mean numerous, probation violations, or fallouts from Delancey Street, or something along those lines. I just don't do it because putting somebody in custody because they used drugs just doesn't work.

"Strong statistics, reliable statistics, show that when someone is a substance abuser, and they're incarcerated, it doesn't matter if they're incarcerated for 10 days, 10 months, or 10 years, or longer, within 48 hours of release they're going to be right back at it again. So, yes, they need help. That's not what we're dealing with in this instance.

---

Section 4018 is inapplicable as it states: "The board of supervisors making such order may prescribe and enforce the rules and regulations under which such labor is to be performed; and provide clothing of such a distinctive character for said prisoners as such board, in its discretion, may deem proper."

15

"I understand, and I do believe, that Mr. Barnard is a drug user. He's indicated to me in his letter, and he indicated, I believe, when he testified, but at least in the letter that he sent to the court, that he has been sober. And you can get your drugs in jail, we know that, but he indicated he has not. That's not what this is about. This is about putting that misery into the mind of other people who will use their drugs.

"And sure, if they don't buy their drugs from you, Mr. Barnard, they're going to get it from someone else. I get that. I sure get that. We can only do that one at a time, though."

The court found the absence of mitigating factors within the meaning of rule 4.423 of the California Rules of Court. Barnard does explain which factor or factors in rule 4.423 the trial court should have found applicable.

The trial court also found several aggravating factors relating to the offenses under rule 4.421 of the California Rules of Court, including that Barnard was "convicted of another crime for which a consecutive sentence could have been imposed . . . but for which concurrent sentences are being imposed"; that the crimes indicated planning, sophistication, and professionalism; and the crimes involved a large quantity of contraband. In addition, the court found Barnard had engaged in conduct that indicated a serious danger to society, Barnard's convictions as an adult (five felonies and several misdemeanors) are numerous, and he had performed poorly on probation, suffering parole violations.

Barnard does not challenge the court's findings of aggravating factors.

On this record, we cannot say the trial court's refusal to grant Barnard a split sentence and its decision to impose the upper term of four years on the transportation of heroin offense and a concurrent middle term of three years on the transportation of methamphetamine offense constituted an abuse of discretion. The trial court stayed execution of sentence as to the two possession for sale offenses and added a one-year consecutive term for each of two of Barnard's prior prison term enhancement

16

allegations, striking the other prior prison term enhancement allegations for the purpose of sentencing.  We find no error.


DISPOSITION

The judgment is affirmed.



FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


IKOLA, J.